UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LYFT INC. SECURITIES LITIGATION | Case No. 19-cv-02690-HSG<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 98 |

Pending before the Court is the motion for class certification filed by Lead Plaintiff Rick Keiner. *See* Dkt. No. 98 ("Mot."); Dkt. No. 117 ("Opp."); Dkt. No. 127 ("Reply"). The Court held a hearing on the motion on March 11, 2021. *See* Dkt. No. 147. Having carefully considered the parties' arguments, the Court **GRANTS** the motion.

**I.   BACKGROUND**

On April 16, 2021, Plaintiff filed the operative consolidated complaint against Defendant Lyft Inc. ("Lyft"), Logan Green, Co-Founder, Chief Executive Officer, and Director on Lyft's board of directors (the "Board"), John Zimmer, Co-Founder, President and Vice Chairman of the Board, Brian Roberts, Chief Financial Officer, Prashant (Sean) Aggarwal, Chairman of the Board, Board Members Ben Horowitz, Valerie Jarrett, David Lawee, Hiroshi Mikitani, Ann Miura-Ko, and Mary Agnes (Maggie) Wilderotter ("Individual Defendants," and collectively with Lyft, "Defendants").[1]  *See* Dkt. No. 74 ("CCAC").

Lyft is a rideshare company that "sought to revolutionize transportation by launching its peer-to-peer marketplace for on-demand ridesharing." CCAC at ¶ 4. Lyft registered its issuance

---

[1] On October 14, 2020, the parties stipulated to the voluntary dismissal of Former Board Member Jonathan Christodoro, "who resigned from the Board prior to signing Lyft's registration statement." Dkt. No. 103.

of common stock "under the Securities Act of 1933, as amended, pursuant to Lyft's registration statement on Form S-1 (File No. 333-229996) declared effective on March 28, 2019." *Id.* at ¶ 3. Lyft offered 32.5 million shares to the public through an initial public offering ("IPO") at a price of $72.00 per share, generating total proceeds of $2.34 billion. *Id.* at ¶ 5. According to Plaintiff, Lyft made representations in the IPO Registration Statement and Prospectus filed in connection with the IPO that "were materially misleading, omitted information necessary in order to make the statements not misleading, and omitted material facts required to be stated therein." *Id.* ¶ 6.

On March 4, 2020, the Court appointed Rick Keiner as Lead Plaintiff. Dkt. No. 64. On May 14, 2020, Defendants moved to dismiss Plaintiff's consolidated amended class action complaint. Dkt. No. 78. On September 8, 2020, the Court granted in part and denied in part Defendants' motion. Dkt. No. 96. On September 25, 2020, Plaintiff filed the instant motion seeking to certify the following class:

> All persons and entities who purchased or otherwise acquired the common stock of Lyft issued and traceable to the IPO Registration Statement. Excluded from the Class are defendants and their families, the officers, directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heir, successors or assigns, any entity in which defendants have or had a controlling interest and any entity that underwrote the Lyft IPO including any officer, director or affiliate of any Lyft IPO underwriter.

Mot. at 1. Plaintiff also requests that the Court appoint him as Class Representative and appoint Block & Leviton as Class Counsel. *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions, including the issue of class certification. Class certification is a two-step process. To warrant class certification, a plaintiff "bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("A party seeking class certification must affirmatively demonstrate [her] compliance with the Rule.").

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If the four prerequisites of Rule 23(a) are met, a court also must find that the plaintiff "satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs assert that they meet the requirements of Rule 23(b)(3). *See* Dkt. No. 98. Rule 23(b)(3) applies where there is both "predominance" and "superiority," meaning "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). To determine whether a putative class action satisfies the requirements of Rule 23(b)(3), courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (citing *Dukes*, 564 U.S. 350–51). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1194–

3

95; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[A] district court *must* consider the merits if they overlap with the Rule 23(a) requirements."). The issue to be decided on a certification motion is whether the case should be "conducted by and on behalf of the individual named parties only" or as a class. *See Dukes*, 564 U.S. at 348.

## III. DISCUSSION

As noted, Plaintiff moves to certify the following class:

> All persons and entities who purchased or otherwise acquired the common stock of Lyft issued and traceable to the IPO Registration Statement. Excluded from the Class are defendants and their families, the officers, directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heir, successors or assigns, any entity in which defendants have or had a controlling interest and any entity that underwrote the Lyft IPO including any officer, director or affiliate of any Lyft IPO underwriter.

Mot. at 1. Defendants assert that Plaintiff fails to the meet the requirements of Federal Rule of Civil Procedure 23(b) and that the class definition should be modified.[2] *See generally* Opp.

### A. Rule 23(a)

#### i. Numerosity

Rule 23(a) requires that the putative class be "so numerous that joinder of all members is impracticable." *See* Fed R. Civ. P. 23(a)(1). "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014) (citation omitted). Although Plaintiff does not provide a clear estimate of how many putative class members there are, he details that "Lyft sold 32.5 million shares of its common stock pursuant to the IPO Registration Statement." Mot. at 5. Given the number of shares traded during the class period, the Court is satisfied that the putative class members are sufficiently numerous to make joinder impracticable. *See Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226 YGR, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016) (citation omitted) ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course

---

[2] Defendants also contend that the class period must end on August 19, 2019, the date the lock-up period expired. Opp. at 26. Plaintiff does not oppose ending the class period at the end of the lock-up period. Reply at 22. The Court thus holds that the class period ends on August 19, 2019.

4

of more than a year.").

###### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350 (citation omitted) (emphasis omitted).

Plaintiff argues, and Defendants do not contest, that Plaintiff's claims share various common questions. Mot. at 6. Common questions include whether the IPO Registration Statement contained untrue statements of material fact or omitted to disclose material facts, whether public sources of information could have revealed the purportedly untrue statements or omissions, and whether Defendants violated the Securities Act of 1933. The Court finds these questions are sufficient to satisfy the commonality requirement.

###### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). Under the "permissive standards" of Rule 23(a)(3), the claims need only be "reasonably co-extensive with those of absent class members," rather than "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In other words, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v.*

5

*Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158, & n.13 (1982). However, typicality—like adequacy—looks at whether Plaintiffs are proper parties to proceed with the suit. *Id.*

Plaintiff contends, and Defendants do not dispute, that his claims are typical of the claims of all members of the proposed class. Mot. at 7. As pled, all putative class members purchased shares traceable to the IPO Registration Statement and have the same legal claims under the Securities Act relating to the same purported misstatements and omissions. Because the asserted claims are reasonably co-extensive with those of absent class members, the Court finds the typicality requirement is met.

### iv. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, the Court must address two legal questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other putative class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the proposed class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry too "tend[s] to merge" with the commonality and typicality criteria. *See Falcon*, 457 U.S. at 158, n.13.

The Court is unaware of any conflicts of interest in this matter, and no evidence in the record suggests that either Plaintiff or proposed class counsel have a conflict with other class members. Defendants do not challenge the adequacy of Plaintiff's legal counsel, nor is the Court aware of any reason why they should. *See* Dkt. No. 64 at 11 (finding "Block & Leviton LLP has extensive experience as counsel in securities class actions"). And the Court finds that proposed class counsel and Plaintiff have vigorously prosecuted this action on behalf of the class to date. Accordingly, the adequacy of representation requirement is satisfied.

### B. Rule 23(b)(3)

Plaintiff seeks certification under Rule 23(b)(3), which requires Plaintiff to show predominance and superiority. Defendants assert that Plaintiff fails to meet either requirement

because individual inquiries are required to determine whether investors had actual knowledge of the allegedly omitted facts. As detailed below, the Court finds that Plaintiff has met both requirements.

### i. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and internal quotation marks omitted; brackets in original). This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (citation and internal quotation marks omitted). The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a). *See Comcast*, 569 U.S. at 34 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

Here, the Court is satisfied that common questions predominate. To allege a Section 11 claim, a plaintiff must show "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)). Whether Lyft's Registration statement contained untrue statements or omissions, and whether any such misrepresentations or omissions were material, are common questions that can be proven through evidence common to the class.

Defendants argue that individual issues concerning its affirmative knowledge defense defeat predominance. Opp. at 16–25. Courts may consider whether affirmative defenses defeat predominance only for defenses "actually advanced and for which [the defendant] has presented evidence," rather than those a defendant "might advance or for which it has presented no

7

evidence." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018). And for any defenses advanced, courts should consider whether the "supporting evidence may be sufficiently similar or overlapping to allow [plaintiff] to satisfy the predominance requirement of Rule 23(b)(3) with respect to those defenses." *Id.*

As relevant here, recovery is available under Section 11 to "any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission)." 15 U.S.C. § 77k(a). Defendants contend that the allegedly omitted information was not "selectively or uniformly disclosed to a discrete group of investors," and that the purportedly omitted information was publicly available, so as to require individual inquiries into investor knowledge. Opp. at 17–18. Defendants attach an expert declaration of Michael Kwak, who assessed the information publicly available prior to Lyft's IPO regarding the existence of sexual assault allegations and the extent of service and repair issues.[3] Dkt. No. 119, Declaration of Michael Kwak ("Kwak Decl.") ¶ 8. Mr. Kwak asserts he identified twenty unique stories concerning sexual assault allegations and seven unique stories related to service and repair issues. *Id.* at ¶ 11.[4] Defendants also submit declarations from various portfolio managers who purchased shares in Lyft's IPO. *See* Dkt. No. 116-7, Ex. 1 (Investor Declarations); Dkt. No. 134-3 Ex. 24 (Supplemental Investor Declarations). Defendants contend that their proffered evidence shows that information regarding the purportedly omitted facts was publicly available, and that some investors knew of those facts.

The Court finds that Defendant's challenges do not defeat predominance. Plaintiff's remaining claims include allegations that

- "Lyft failed to disclose pervasive sexual assault and safety issues in the Registration Statement";

---

[3] Mr. Kwak also reviewed articles concerning "Lyft's April 14, 2019 brake related removal of electric bikes," and found that these articles were "publicly disseminated by at least April 15, 2019." Kwak Decl. ¶¶ 8, 26.
[4] Plaintiff disputes that the cited articles reflect twenty unique stories concerning sexual assault allegations. Reply at 14 n.19. According to Plaintiff, three of these articles "concern the exact same incident" and another three "do not concern actual Lyft drivers assaulting passengers at all." *Id.*

8

- "Lyft saw an increase in the number of sexual assaults its drivers committed," but the "Registration statement fails to even mention sexual assaults at all";
- "the Company faced serious reputational damage and legal liability" from these incidents;
- "thousands of the bikes in Lyft's rideshare program suffered from safety and maintenance issues that jeopardized the growth" of that program, which "was experiencing severe and pervasive safety issues" by the time of the IPO; and
- "as a result of the braking issue," Lyft "pulled its entire fleet of thousands of electric bikes" in certain cities on April 14, 2019.

CCAC ¶¶ 12–13, 110, 131, 133, 170, 175–77. Crucially, Defendants' arguments are not based on the relevant misrepresentations and omissions alleged in the complaint, but instead on more general information relating to the existence of "sexual assault allegations and lawsuits" and bike "repair and maintenance issues." *See* Opp. at 18–19. This does not show that all (or any) putative class members had knowledge of the alleged omissions concerning the magnitude of the sex assault issue or the particular brake issue in Lyft's bike fleet that led to a recall.

With respect to the limited number of articles Defendants proffer concerning bike repair and maintenance issues, those articles do not describe the specific brake problem at issue.[5] *See Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 587 (C.D. Cal. 2012) (rejecting defendants' argument that individualized issues of knowledge defeated predominance because they "presented no evidence that any class member had any knowledge that the specific, alleged misrepresentations . . . were false"). They instead discuss "frustrating keypads," "missing or stolen" bikes, "damaged handlebars" leading Citi Bikes to "remove[] a part of [their] fleet from service" in 2018, limited availability of electric bikes due to "immense popularity and low supply," riders noting "seats that won't stay up," bikes that "need 45 minutes to recharge," "trouble checking a bike out and returning it," and two fires caused by experimenting with

---

[5] The Court notes that no evidence has been presented as to the reputation or breadth of readership of any of the cited news sources, at least one of which appears to be a college student newspaper. *See* Kwak Decl., Ex. 1 at 54.

batteries in Citi Bike's facilities. *See* Kwak Decl., Ex. 4. And the declarations discussing Lyft's bike business reflect only a general awareness of past repair and maintenance issues and the potential need for service in the future. Knowledge that bikes have required and may require maintenance, however, does not meaningfully address Plaintiff's theory.

Similarly, the declarations concerning the sexual assault issue reflect a general awareness that Lyft was subject to some allegations of sexual assault, rather than any knowledge about the alleged magnitude of the problem. And relatedly, with respect to Defendants' cited articles about sexual assault allegations, Plaintiff contends that he has "uncovered evidence" of "at least 103 such incidents, only a fraction of which had been reported in the media at the time of the IPO." Reply at 3; *see also* Dkt. No. 128, Declaration of Whitney E. Street ("Street Decl.") ¶¶ 3–8 (lead counsel has found "information on at least forty-two (42) incidents of sexual assault committed by Lyft drivers prior to Lyft's IPO that are in addition to the fifty-three (53) incidents cited in CAC ¶ 111"). This representation is in tension with Defendants' suggestion that all (or most) pre-IPO sexual assaults were necessarily publicly reported before the IPO. *See* Opp. at 4 ("[W]hile serious safety incidents such as claims of sexual assault are thankfully quite rare, these claims are and have been publicly reported."); *see also id.* at 19 ("The *only* information that was not yet publicly reported at the time of the IPO . . . is information that had *not yet occurred*.") (emphasis in original). If the extent and magnitude of the issue had not been fully reported, it would cast doubt on any declarant's ability to conclusively assert full knowledge of the relevant issues.

At bottom, none of the evidence shows that any putative class member knew of the purported omissions. And given that Defendants maintain that no class members received selective disclosures, the Court finds that there are common facts and questions as to the content of publicly available sources, including the news articles cited by Defendants. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 348 (S.D.N.Y. 2015) ("For every individual question of whether each investor had actual knowledge stemming from these reports, there are scores of common facts and questions about the content of each and every media report."). Defendants' assertion that investors had actual knowledge of the alleged misrepresentations and omissions based on these media reports also can be resolved on a class-

1   wide basis. *See id.* ("[W]hether any investor . . . gained relevant actual knowledge from media
2   reports precluding their claim presents another common question as to whether the relevant media
3   reports conveyed all of the truth Plaintiffs allege was misstated or omitted."); *In re IndyMac*
4   *Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 239 (S.D.N.Y. 2012) (finding that articles and
5   complaints in lawsuits cited by defendants to show "knowledge or notice" were publicly available
6   and would be "subject to generalized proof").[6] Whether or not Plaintiff prevails on the merits, the
7   answers to these questions are common to all class members. *Amgen Inc*, 568 U.S. at 459 ("Rule
8   23(b)(3) requires a showing that questions common to the class predominate, not that those
9   questions will be answered, on the merits, in favor of the class."). Accordingly, Defendant has not
10  shown that any individualized issues of investor knowledge will predominate over common issues.

        **ii.   Superiority**

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.* "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234–35 (9th Cir. 1996).

Defendants contend that "required individual inquiries into knowledge" would necessitate "mini-trials" for every investor. Opp. at 25. At this stage, the Court is satisfied that Plaintiff has

---

[6] Defendants' reliance on *Vignola v. Fat Brands, Inc.*, No. CV187469PSGPLAX, 2020 WL 1934976, at *3 (C.D. Cal. Mar. 13, 2020), does not change the Court's conclusion. In *Vignola*, the defendant argued that allegedly omitted information regarding a company's bankruptcy filings, delisting, and ownership had been "widely reported" over several years "from sources with varying readership and reputation," making investors' actual knowledge an individualized issue. *Id.* at *4. In that case, there was no dispute that those sources contained articles concretely describing the purportedly omitted information.

11

1  met the superiority requirement. Defendants maintain that the purported omitted information was
2  publicly available, but as Plaintiff notes, they must show that the publicly available information
3  could have conveyed the truth of the allegedly omitted information. Defendants' affirmative
4  knowledge defense thus depends on common proof concerning the extent of publicly available
5  information and the extent of the actual problem in proportion to publicly available information.
6  The Court finds that resolving these issues in a single proceeding is more efficient than doing so in
7  hundreds or thousands of individual actions. If these predicate issues are resolved in Plaintiff's
8  favor, there will be no need for individualized inquiries into knowledge. And as Plaintiff
9  acknowledges, the Court may revisit class certification at any time should class treatment become
10 unduly inefficient or unmanageable. *See* Fed. R. 23(c)(1)(C) ("An order that grants or denies class
11 certification may be altered or amended before final judgment.").[7]

\*   \*   \*

Because the Court finds that Plaintiffs have met the Rule 23(a) and 23(b)(3) requirements for, the Court **GRANTS** Plaintiffs' motion for class certification.[8]

## IV.  CONCLUSION

The Court **GRANTS** Plaintiffs' motion to certify the Class. Accordingly, the Court certifies the following class:

> All persons and entities who purchased or otherwise acquired the common stock of Lyft issued and traceable to the IPO Registration Statement. Excluded from the Class are defendants and their families, the officers, directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heir, successors or assigns, any entity in which

---

[7] Plaintiff acknowledges that another class action in its initial phases in California State Court asserts similar claims, but the Court does not find this relevant to the class certification determination. *See* Mot. at 9–10.

[8] Defendants argue that "the class definition should be modified to include only investors who purchased before April 15, 2019," the date that "substantially similar claims were first filed in state court on behalf of the same purported class." Opp. at 26–28. Though the state filing may be relevant to the question of damages, the Court is not persuaded that it matters in defining the class. During the hearing, Plaintiff's counsel contended that Defendants' argument presents a question of damages appropriately decided at the summary judgment stage rather than the class certification stage. Tr. 23:24-25:16. And defense counsel acknowledged that he was not aware of any authority addressing this issue in the context of defining a class. *Id.* at 27:23-28:6. Absent any relevant authority to the contrary, the Court concludes that it need not address Defendants' argument at this stage.

defendants have or had a controlling interest and any entity that underwrote the Lyft IPO including any officer, director or affiliate of any Lyft IPO underwriter.

The Court appoints Plaintiff Keiner as Class Representative and appoints Block and Leviton LLP as Class Counsel. The Court **SETS** a telephonic case management conference for August 31, 2021, at 2:00 p.m. The Court **DIRECTS** the parties to submit a joint case management statement by August 26, 2021. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines

**IT IS SO ORDERED.**

Dated:  8/20/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

13