Jeffrey C. Block, *pro hac vice*
Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

Vincent Cheng (SBN 230827)
**Block & Leviton LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
(510) 543-0489 phone
vincent@blockleviton.com

*Attorneys for Lead Plaintiff*
*Rick Keiner and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| In re Lyft, Inc. Securities Litigation | Lead Case No.: 4:19-cv-02690-HSG |
| This document relates to: | **Lead Plaintiff's Notice of Motion, Unopposed Motion for Preliminary Approval of Settlement, and Memorandum of Points and Authorities in Support Thereof** |
| ALL ACTIONS | |
| | **Date:** Oct. 13, 2022 |
| | **Time:** 2:00 p.m. |
| | **Courtroom:** 2, 4th Floor |
| | **Hon. Haywood S. Gilliam, Jr.** |

## Table of Contents

NOTICE OF MOTION AND UNOPPOSED MOTION ..................................................1

STATEMENT OF ISSUES TO BE DECIDED ...............................................................1

I.     PRELIMINARY STATEMENT ..........................................................................2

    A.   Statement of Alleged Facts.........................................................................2

    B.   Procedural History......................................................................................3

    C.   Settlement Negotiations..............................................................................5

II.    THE SETTLEMENT AGREEMENT ..................................................................6

    A.   Settlement Consideration............................................................................6

    B.   Settlement Class and Claims ......................................................................6

    C.   Settlement Administration...........................................................................7

    D.   Attorneys' Fees and Service Award ...........................................................8

    E.   Cy Pres Awardee ........................................................................................8

    F.   Class Action Fairness Act (CAFA) Notice ................................................9

    G.   Past Distributions........................................................................................9

III.   ARGUMENT.....................................................................................................10

    A.   The Settlement Agreement Is the Result of Arm's Length Negotiations Conducted in Good Faith Between Experienced Counsel and Mediated by a Professional Mediator............11

    B.   The Settlement Agreement Has No Obvious Deficiencies and Does Not Grant Preferential Treatment to Lead Plaintiff or Any Segment of the Class....................................12

    C.   The Settlement Agreement Falls Within the Range of Reasonableness and Warrants Notice and a Hearing on Final Approval..................................................................13

    D.   The Court Should Approve the Form of Notice and Plan for Providing Notice to the Class and set a Final Approval Hearing Date. ................................................................17

**Table of Authorities**

**Cases**

*Alberto v. GMRI, Inc.,*
  252 F.R.D. 652 (E.D. Cal. 2008)................................................................................10

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .........................................................................10, 16

*De La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ,
  2017 WL 2670699 (N.D. Cal. June 21, 2017)......................................................17, 18

*Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD,
  2019 WL 6111378 (N.D. Cal. June 13, 2019)...............................................................17

*Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG,
  2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ....................................10, 11, 13, 15

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...............................................................13

*Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG,
  2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ...............................................11, 15, 18

*Hicks v. Stanley*, No. 01 CIV. 10071 (RJH),
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................................................12

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F.Supp. 2d 1132 (C.D. Cal. 2008)..........................................................................14

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................13, 16

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW,
  2007 WL 1991529 (N.D. Cal. June 30, 2007)........................................................15, 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. MDL 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019)..........................13

*Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG,
  2022 WL 307942 (N.D. Cal. Feb. 2, 2022)..........................................10, 11, 12, 16

*Ochinero v. Ladera Lending, Inc.*, No. SACV 19-1136 JVS (ADSx),
  2021 WL 4460334 (C.D. Cal. July 19, 2021) ...............................................................11

Order Granting Defendants' Motion for Summary Judgment, *Brokop v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW (D. Colo. Apr. 5, 2022) ............................................................15

*Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...........................................................12

*State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) .......................................................17

*Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...........................................11, 14, 18

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) .........................................10, 13, 18

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ...........................................................12

## Statutes

15 U.S.C. § 77k(e) ..................................................................................................14

15 U.S.C. § 78u-4(a)(4) .........................................................................................13

15 U.S.C. §78u-4(a)(7) ...........................................................................................18

## Rules

Fed. R. Civ. P. 23(e)(1)(B) .....................................................................................18

**NOTICE OF MOTION AND UNOPPOSED MOTION**

**TO:  ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**

PLEASE TAKE NOTICE that on October 13, 2022, at 2:00 p.m., or as soon as counsel may be heard before the Honorable Haywood S. Gilliam, Jr. United States District Judge, at the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 2, 4th floor, Oakland California, Lead Plaintiff Rick Keiner ("Keiner" or "Lead Plaintiff"), will and does hereby move for an order: (1) preliminarily approving the proposed settlement of this Action; (2) approving the form and manner of giving notice of the proposed settlement to the Class; and (3) scheduling a hearing before the Court to determine whether the proposed settlement, and Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses, should be granted final approval.

The grounds for this motion are that the proposed settlement is well within the range of what could be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated to members of the Class and a hearing for final approval of the proposed settlement scheduled.

This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation of Settlement ("Settlement Agreement" or "Stipulation") dated June 8, 2022, and exhibits thereto which embody the terms of the proposed settlement between the parties, submitted herewith, and such other and further representations as may be made by Counsel at any hearing on this matter.[1]

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the proposed settlement of this action for the sum of $25,000,000 is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the Class.

2.      Whether the proposed form of settlement notice and proof of claim and release form and the manner for dissemination to the members of the Class should be approved.

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation.

3.      Whether the Court should set a date for a hearing for final approval of the proposed settlement and the application of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.

## I.      PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff respectfully submits this memorandum of points and authorities in support of his unopposed motion for preliminary approval of the proposed settlement of this certified class action. The Settlement Agreement, as set forth in the Stipulation of Settlement dated June 8, 2022 (the "Stipulation") and filed contemporaneously herewith, provides for Defendant Lyft, Inc. ("Lyft") to pay or cause to be paid $25 million in cash for the benefit of the Class. Lead Plaintiff believes that the Settlement Agreement would amount to an excellent result for the Class, especially considering the substantial challenges and risks of a reduced recovery after summary judgment or trial, and requests that this Court grant preliminary approval.

### A.      Statement of Alleged Facts

Lyft went public on March 28, 2019, offering 32.5 million shares to the public at a price of $72.00 per share (the "IPO"). ¶ 5.[2] Lyft's share price began to decline almost immediately thereafter. By May 17, 2019, the day this action was filed in the Northern District of California, a share of Lyft common stock was worth less than $54.00 per share. ¶ 24.

Lead Plaintiff alleges that investors were harmed because of misstatements and omissions in Lyft's IPO Registration Statement.

Lead Plaintiff alleges that Lyft cultivated a brand image as a safer, more socially conscious rideshare alternative with a focus on appealing to female passengers. ¶¶ 45–63. After the IPO, however, scores of reports came to light of Lyft drivers sexually assaulting their passengers. ¶¶ 65, 73–84. Dozens of individuals brought claims against Lyft related to driver sexual misconduct in the months following the IPO. ¶¶ 73–84. Lead Plaintiff claims that Lyft's Registration Statement failed to disclose this existential risk to Lyft's brand and business. ¶ 67.

---

[2] Citations to "¶" are to the Second Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws, ECF No. 205-5.

Lead Plaintiff further alleges that Lyft's nascent bikeshare fleet was plagued by defects and maintenance issues, threatening an investment that Lyft had hailed as a "key milestone" in its growth strategy. ¶¶ 146–49, 152. Just weeks after the IPO, Lyft was forced to pull its entire fleet of electric bikes from three major markets because of a particular braking issue that had caused dozens of rider injuries. ¶¶ 158–59. Lead Plaintiff alleges that Lyft's Registration Statement did not discuss the problems Lyft was experiencing with bike maintenance and safety. ¶ 174.

Finally, Lead Plaintiff alleges that in the lead up to the IPO and in its registration statement, Lyft repeatedly touted its growth in market share and especially how it managed to take share from its rival Uber while reducing its reliance on promotional coupons. ¶¶ 90–106. Lyft, however, had again increased its reliance on price promotions in the months before the IPO. ¶ 107. Lead Plaintiff further alleges that Lyft's price promotions triggered a price war with Uber that saw Uber reclaim market share from Lyft, ¶¶ 111–13, but that Lyft's Registration Statement represented that Lyft's market share was stable, if not increasing, as a key selling point to investors, ¶¶ 100–06.

### B.     Procedural History

On May 17, 2019, Matias Malig filed the first of two consolidated securities class actions alleging violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against Defendants and the Underwriters in this Court. *See* ECF No. 1.[3] After the Court appointed Rick Keiner to serve as Lead Plaintiff, ECF No. 64, Keiner filed his Consolidated Amended Class Action Complaint (the "First Amended Complaint" or "FAC") on April 16, 2020. *See* ECF No. 96.

*Motion Practice:*

Defendants moved to dismiss the FAC on May 14, 2020. ECF No. 78. On September 8, 2020, the Court denied Defendants' motion with respect to certain omissions regarding driver sexual misconduct and bikeshare maintenance but granted the motion and dismissed the remainder

---

[3] A parallel case alleging Securities Act claims against Defendants is also pending in the California Superior Court, County of San Francisco, captioned *In re Lyft, Inc. Securities Litigation*, Case No. CGC-19-575293 (the "State Action"). On January 25, 2022, Judge Andrew Y.S. Cheng of the California Superior Court stayed the State Action and denied plaintiffs' motion for class certification without prejudice. *See* Block Decl. at ¶ 45.

of Lead Plaintiff's allegations. *See* ECF No. 96. At this time, Lead Plaintiff voluntarily dismissed without prejudice the Underwriters (as defined in Stipulation ¶ 1.32) and his § 12(a)(2) claim. ECF No. 85. However, Lead Plaintiff reserved the right to add the Underwriters back as parties.

On September 25, 2020, Lead Plaintiff filed his Motion for Class Certification, ECF No. 98, which Defendants opposed on January 19, 2021, ECF No. 117. While the Motion for Class Certification was pending, Defendants filed a Motion for Judgment on the Pleadings. ECF No. 152. On August 20, 2021, the Court granted Lead Plaintiff's Motion for Class Certification, ECF No. 177, and denied Defendants' motion for judgment on the pleadings, ECF No. 179.

On September 30, 2021, Lead Plaintiff filed his Motion for Leave to File [Proposed] Second Amended Class Action Complaint, ECF No. 206, which Defendants opposed, ECF No. 230. The Second Amended Complaint added claims that Lyft had become engaged in an alleged price war with Uber that was eroding Lyft's market share gains, contrary to representations in the Registration Statement that price competition was declining and Lyft's market share increasing. ECF No. 206-2 at ¶ 17. The Court had not yet reached a decision on Lead Plaintiff's motion to file the Second Amended Complaint by the time the Settling Parties (as defined in Stipulation ¶ 1.29) informed the Court that they had reached an agreement-in-principle on February 8, 2022. *See* ECF No. 240. As a result, Plaintiff's motion was terminated as moot without prejudice. ECF No. 242. The Settling Parties have stipulated to designate the Second Amended Complaint as the operative complaint prior to filing this Motion, Defendants continue to deny the allegations stated therein. *Discovery:*

The PSLRA's automatic discovery stay lifted upon the partial denial of Defendants' motion to dismiss on September 8, 2020 and the Settling Parties began negotiating discovery shortly thereafter. *See* Stipulation at 2. Lead Plaintiff made productions of documents on September 30, 2020 and December 21, 2020, and sat for a deposition on November 17, 2020 *See* Declaration of Jeffrey C. Block In Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement ("Block Decl.") at ¶¶ 9, 12, 34. Defendants made productions on January 18, 2021; January 19, 2021; January 29, 2021; July 12, 2021; July 19, 2021; August 20, 2021; September 8, 2021; September 20, 2021; October 4, 2021; October 8, 2021; October 28, 2021; November 13,

2021; November 16, 2021; November 19, 2021; November 30, 2021; December 13, 2021; and December 24, 2021. *Id.* at ¶¶ 13–28. Discovery was frequently contentious. The Settling Parties held at least twenty-three meet and confers between January 4, 2021 and January 24, 2022 on discovery issues, *id.* at ¶ 32, and filed four motions to compel or discovery letter briefs, *see* ECF Nos. 131, 139, 157, 198. Lead Plaintiff served a third-party document subpoena on the Underwriters on October 27, 2020. Block Decl. ¶ 39. The Underwriters served written responses and produced documents on December 21, 2020, and May 3, 2021, respectively. *Id.* In addition to other third-party document requests,[4] Lead Plaintiff served a subpoena on Defendants' counsel in November 2021 requesting counsel produce its communications with certain Class Members and Defendants in turn issued a subpoena for all of Lead Counsel's communications with Class Members. Block Decl. at ¶¶ 41–42. Lead Plaintiff, through his counsel, took his first deposition of a Lyft employee on January 14, 2022 and soon thereafter noticed the depositions of nineteen additional persons. *Id.* at ¶ 36.

### C.     Settlement Negotiations

After certifying the Class, the Court called the Settling Parties to a case management conference on August 31, 2021. ECF No. 195. At the conference, the Court directed the Settling Parties to file a stipulation and proposed order selecting an ADR process by September 8, 2021. *Id.* The Settling Parties complied, selecting Private ADR as their chosen ADR process and agreeing to hold the ADR session by December 15, 2021. ECF No. 200.

On November 2, 2021, the Settling Parties participated in a formal mediation. Block Decl. at ¶ 51. David Murphy of Phillips ADR served as mediator. *Id.* at ¶ 49. Mr. Murphy has five years' experience as a mediator, and over three decades of experience in complex litigation, including securities cases.[5] The November 2, 2021 mediation did not result in a settlement agreement. *See*

---

[4] Lead Plaintiff also served document requests on sixty-one non-parties over the course of discovery. *See* Block Decl. at ¶ 39.

[5] Mr. Murphy's Bio states in part that: "Over the past five years with Phillips ADR, David has served as a mediator, arbitrator and independent monitor in hundreds of cases, including antitrust, patent, securities law, corporate governance, bankruptcy, environmental, tort, contract and investment company disputes." *David Murphy: Mediator/Arbitrator/Independent Panelist*, Phillips ADR (last visited March 10, 2022), http://www.phillipsadr.com/bios/david-murphy/.

*id.* at ¶ 51. The Settling Parties reengaged in settlement discussions in November and December 2021. *Id.* at ¶53. However, these discussions still failed to produce a resolution. *Id.* In January 2022, the parties reengaged Mr. Murphy to facilitate negotiations, though these discussions again failed. *Id.* at ¶ 54. Finally, in early February 2022, the parties again reengaged Mr. Murphy to mediate negotiations. *Id.* at ¶ 55. On February 4, 2022, Mr. Murphy made a mediator's recommendation to settle the action for $25 million. *Id.* The Settling Parties mutually agreed-in-principle to Mr. Murphy's recommendation on February 7, 2022. *Id.*

## II.    THE SETTLEMENT AGREEMENT

### A.    Settlement Consideration

The Settlement Agreement provides that Defendant Lyft will pay or cause to be paid consideration of $25,000,000 (the "Settlement Amount") in cash into an Escrow Account for the benefit of the Class. The Settlement Amount, after the deduction of any attorneys' fees and Litigation Expenses provided for in the Stipulation or approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions (the "Net Settlement Fund"), will be distributed among Class Members who timely submit valid Proof of Claim and Release Forms ("Authorized Claimants"), in accordance with the Plan of Allocation set forth in the Stipulation and Notice. *See* Ex. A-1 at 14. The $25 million settlement represents approximately 77 cents per share issued in the IPO (before the deduction of any Court-approved fees, expenses and costs). *See* Block Decl. at ¶ 58.

### B.    Settlement Class and Claims

There are no differences between the Class as certified by the court and the Class that will be entitled to share in the Settlement, except that certain individuals who are presently members of the Class may request exclusion.

As a condition of the Settlement Agreement, Lead Plaintiff and the Class will release the claims this Court certified the class to pursue, *see* ECF No. 177, specifically, Securities Act Sections 11 and 15 claims arising from Lyft's IPO Registration Statement as against all Defendants. Additionally, Lead Plaintiff and the Class will release all claims that could have been asserted in this action, or in any other action, that (a) arise out of, are based upon, or relate in any

way to any of the allegations or facts that were or could have been alleged in this action, or (b) arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any Lyft securities acquired pursuant and/or traceable to Lyft's Registration Statement, *see* Stipulation ¶ 1.22, against all Released Defendant Parties, including the Underwriters,[6] *see* Stipulation ¶ 1.24.

### C.   Settlement Administration

The Claims administrator will calculate each Authorized Claimant's claim amount based on the information each Class Member supplies in her or his Proof of Claim and Release. The Net Settlement Fund will be allocated *pro rata* pursuant to the Plan of Allocation and based on the amount of each Authorized Claimant's Recognized Claim as calculated by the Claims Administrator after the Effective Date. Such calculations shall be made using the damages formula of Section 11(e). *See* Ex. A-1 at 15. Defendants do not have a reversionary interest in the Net Settlement Fund unless the settlement is terminated. *See* Stipulation at ¶ 3.10.

Lead Plaintiff has selected A.B. Data for Court approval as Claims Administrator. A.B. Data previously served as Notice Administrator after the Class was certified and was selected among numerous administrators after providing a competitive quote for notice and administration services at that time. A.B. Data is familiar with the case, and has successfully sent or caused to be sent over 250,000 notices to Class Members. *See* ECF No. 232 at ¶ 7; Block Decl. at ¶ 56. Given that A.B. Data has already put in much of the work necessary to ensure that the largest possible number of Class Members receive notice, including processing numerous change-of-address requests, Lead Plaintiff believes A.B. Data's selection as Claims Administrator represents the most efficient and, in terms of administrative expenses, cost-effective means of providing notice to the class. Lead Counsel has engaged A.B. Data to serve as notice or claims administrator twice over the past two years, including earlier in this action. *See* Block Decl. at ¶ 56.

---

[6] Lead Plaintiff voluntarily dismissed his claims against the Underwriters from this action, *see* ECF No. 85, and therefore the Released Claims against the Underwriters were not among the claims initially certified for class treatment. Nonetheless, releasing claims against the Underwriters is sensible here for the reasons described below in Section III.C.

A.B. Data estimates that 20-25% of potential Class Members who receive a Notice will submit a claim. *Id.* at ¶ 57. A.B. Data based its estimate on its experience with settlements in federal securities class actions.

Lead Plaintiff anticipates Notice and Settlement Administration Expenses of no greater than $500,000. Lead Plaintiff believes these costs are reasonable as they amount to just 2% or less of the Settlement Amount. The Notice and Administrative Expenses will be paid from the Settlement Fund.

### D.  Attorneys' Fees and Service Award

Lead Counsel expects to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, or $6,250,000. This represents a 1.72 multiplier over Lead Counsel's current estimated lodestar of approximately $3.6 million, and amounts to approximately 19 cents per eligible share of Lyft common stock. *See* Block Decl. at ¶ 59. To date, Lead Counsel has billed over 5,900 hours in this action. In addition, Lead Counsel will seek payment in an amount not to exceed $550,000 for Litigation Expenses reasonably incurred while prosecuting this action.

Finally, pursuant to the PSLRA and this Court's approval, Lead Plaintiff intends to apply for reimbursement of his reasonable costs and expenses related to his representation of the Class, not to exceed $10,000.

### E.  Cy Pres Awardee

Defendants will not have a reversionary interest in the Net Settlement Fund in the event there is any balance remaining after the distribution. Instead, Lead Counsel will make further distributions to Authorized Claimants until the balance remaining in the Net Settlement Fund is *de minimis*. *See* Stipulation at ¶ 6.8. At that point, any remaining balance, subject to the Court's approval, will be donated to the National Women's Law Center. National Women's Law Center, among other initiatives, helps victims and institutions redress incidents of sexual harassment.[7]

---

[7] *See, e.g.*, *Legal Help for Sex Discrimination and Harassment*, NATIONAL WOMEN'S LAW CENTER (last visited May 10, 2022), https://nwlc.org/times-up-legal-defense-fund/legal-help-for-sex-discrimination-and-harassment/; *The Be Heard in the Workplace Act: Addressing Harassment to Achieve Equality, Safety, and Dignity on the Job*, NATIONAL WOMEN'S LAW CENTER (Apr. 2019),

Lead Plaintiff's liability theory in this action is that investors were injured in part because of Lyft's institutional failure to confront sexual violence. Lead Plaintiff believes that improved norms and transparency around issues of sexual violence will benefit the investing public at large and indeed could have prevented some of the losses investors suffered in this case.[8]

### F. Class Action Fairness Act (CAFA) Notice

Defendants shall be responsible for determining the identity of those who will receive CAFA Notice and the form such notice shall take. Defendants will, at their own cost, serve proper notice of the Settlement Agreement under CAFA no later than ten days after the Settlement Agreement is filed with the Court.

### G. Past Distributions

As an example of a prior settlement which has been fully administered, Lead Counsel, consistent with the Court's guidance, provides information about *In re EZCorp, Inc. Securities Litigation*, Case No. 1:15-CV-00608-SS (W.D. Tex.), which received final approval from the United States District Court for the Western District of Texas on December 6, 2019, and which has now been fully distributed. The details concerning the distribution of that settlement are summarized below.

---

https://nwlc.org/wp-content/uploads/2019/04/BE-HEARD-Factsheet.pdf;         *#ThatsHarassment Campaign Tools Can Help Employers Prevent Harassment*, NATIONAL WOMEN'S LAW CENTER (Jan. 31, 2018), https://nwlc.org/thatsharassment-campaign-tools-can-help-employers-prevent-harassment/; Sarah Crawford & Sharyn Tejani, *What Works at Work: Promising practices to prevent and respond to sexual harassment in low-paid jobs*, NATIONAL WOMEN'S LAW CENTER (2020), https://nwlc.org/wp-content/uploads/2020/05/Convening-report_English-Final.pdf; Maya Raghu & JoAnna Suriani, *#MeTooWhatNext: Strengthening Workplace Sexual Harassment Protections and Accountability*, NATIONAL WOMEN'S LAW CENTER (Dec. 21, 2017), https://nwlc.org/resource/metoowhatnext-strengthening-workplace-sexual-harassment-protections-and-accountability/; Amanda Rossie, Jasmine Tucker, & Kayla Patrick, *Out of the Shadows: An Analysis of Sexual Harassment Charges Filed by Working Women*, NATIONAL WOMEN'S LAW CENTER (2018), https://nwlc.org/wp-content/uploads/2018/08/SexualHarassment Report.pdf.

[8] Counsel for Lead Plaintiff has been informed that Kristin Sverchek, President of Business Affairs at Lyft, serves on the board of National Women's Law Center. Ms. Sverchek is not a defendant in this action and neither she nor Defendant Lyft nor any other Defendant influenced Lead Plaintiff's recommendation to name the National Women's Law Center as *cy pres* awardee.

|  | *In re EZCorp, Inc. Sec. Litig.*, Case No. 1:15-CV-00608-SS (W.D. Tex.)[9] |
| --- | --- |
| **Total # Of Class Members** | Unknown; Notice was sent to 13,800 but the notice was overinclusive |
| **Settlement Consideration** | $4,875,000 |
| **Total # of Class Members to Whom Notice was Sent** | 13,800 |
| **Method(s) of Notice** | Postcard Notice sent by first-class mail to addresses in records provided by Defendant; full Notice posted to settlement website; Summary Notice published once in *Investor's Business Daily* and *PR Newswire* |
| **# (and %) of Claims Forms Submitted** | 2,599 (18.7% of those who received notice), of which 975 were eligible for a payment |
| **Average Recovery per Claimant** | $2,961.83 |
| **Amounts Distributed to *Cy Pres*** | $7,210.94 |
| **Administrative Costs** | $161,745.44 |
| **Attorneys' Fees Awarded** | 33% |
| **Attorneys' Costs and Expenses Awarded** | $258,570.95 |

## III.   ARGUMENT

The Ninth Circuit has recognized a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[A] full fairness analysis is unnecessary" at the preliminary approval stage. *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008) (quoting *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006)). Rather, a Court may grant preliminary approval if a settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022). "Courts lack the authority, however, to 'delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.'" *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2021 WL 5447008, at *8

---

[9] *See* Distribution Declaration of Lance Cavallo Regarding (A) Mailing of the Postcard Notice; (B) Administration of Received Claims; and (C) Proposed Distribution of Settlement Fund, *In re EZCorp, Inc. Securities Litigation*, Case No. 1:15-CV-00608-SS (W.D. Tex. Aug. 4, 2020).

(N.D. Cal. Nov. 22, 2021) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

> **A.** **The Settlement Agreement Is the Result of Arm's Length Negotiations Conducted in Good Faith Between Experienced Counsel and Mediated by a Professional Mediator.**

In scrutinizing settlement agreements for collusion, courts in the Ninth Circuit examine "whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a '"clear sailing" arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel),' and whether the parties agree to a reverter that returns unclaimed funds to the defendant." *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *8 (N.D. Cal. Oct. 5, 2021) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)). None of these indicators is present here. The Stipulation does not contain a "clear sailing" agreement and is non-reversionary. Lead Counsel's anticipated request of 25% of the common fund is right in line with the Ninth Circuit's 25% "benchmark award for attorney fees." *Ochinero v. Ladera Lending, Inc.*, No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334, at *7 (C.D. Cal. July 19, 2021) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). Nor does Lead Counsel's anticipated fee request amount to a disproportionate distribution of the settlement, especially considering the excellent result achieved for the class, *see Infra* Section III.C., and the substantial motion practice required in this action. *Fleming*, 2021 WL 5447008, at *9 (finding award of 30% to be reasonable in light of "significant results" and extent of motion practice); *Juul Labs*, 2022 WL 307942, at *6 (finding fee request of 42% of settlement fund was not disproportionate for purposes of preliminary approval).

In class actions, "Class Counsel is also entitled to recover 'those out-of-pocket expenses that would normally be charged to a fee paying client.'" *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Accordingly, Lead Counsel's anticipated request for reasonable costs and expenses, consisting largely of expenses Lead Counsel paid out of pocket for damages experts and mediation services which were necessary to achieve the settlement of this action, likewise does not amount to a disproportionate distribution of the settlement.

The record further demonstrates that the Settlement Agreement is not collusive. The Settlement Agreement was the result of good-faith, adversarial negotiations and over two and a half years of litigation. The parties, each represented by "experienced counsel familiar with the applicable law, class action litigation, and the facts of this case," reached an arms-length agreement "with the assistance of an experienced mediator." *Juul Labs*, 2022 WL 307942, at *6; *see also Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Settlement Amount was reached at the recommendation of the mediator, Mr. Murphy, and only after several months of negotiations. *See* Block Decl. at ¶¶ 48–55. The Settling Parties continued to vigorously litigate this action while those negotiations were ongoing. *See Supra* Section I.B. During the mediation process, the parties fully explored the strengths and weaknesses of their litigation positions. Numerous issues caused the parties to have different views of this action's settlement value, including: (1) Defendants' overall liability; (2) the strength of Defendants' negative causation defense and degree to which it would reduce recoverable damages; and (3) whether April 15, 2019 or May 17, 2019 would control as the first-filed date for the purposes of Section 11(e)'s damages provision. *See* Block Decl. at ¶ 52. In part because of these differing views, the initial mediation session was unsuccessful. *Id.* Such a "breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005). The Settlement Agreement was reached only after three more months of contentious negotiations, all while the Settling Parties continued hard-fought motion practice and discovery.

### B. The Settlement Agreement Has No Obvious Deficiencies and Does Not Grant Preferential Treatment to Lead Plaintiff or Any Segment of the Class.

Preliminary approval is appropriate only where a settlement "has no obvious deficiencies[ and] does not improperly grant preferential treatment to class representatives or segments of the class." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd*, 157 F Supp 2d 561, 570 n. 12

(E.D. Pa. 2001)). Here, no segment of the Class will receive favorable treatment. Each Authorized Claimant, so long as their claim is equal to or greater than $10.00, will receive a pro-rata distribution of the Net Settlement Fund in proportion to their potential damages, as calculated using Section 11(e)'s statutory formula. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries"). As with the other Class Members, Lead Plaintiff will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation.

Lead Plaintiff's intention to apply for a payment of no more than $10,000 to reimburse him for reasonable costs and expenses (including lost wages), is consistent with the Private Securities Litigation and Reform Act. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) ("The PSLRA expressly permits an award of 'reasonable costs and expenses' to 'any representative party serving on behalf of a class.'") (quoting 15 U.S.C. § 78u-4(a)(4)). The Court should find that the Settlement Agreement does not grant preference to any segment of the Class and has no obvious deficiencies.

### C.   The Settlement Agreement Falls Within the Range of Reasonableness and Warrants Notice and a Hearing on Final Approval.

For the purposes of preliminary approval, "the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir.1982)). To determine if a settlement is within the range of reasonableness, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Fleming*, 2021 WL 5447008, at *10–11 (quoting *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *1 (N.D. Cal. Nov. 21, 2018)). In making this analysis, a Court "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). The Settlement Amount, $25 million, is well within the

range of reasonableness, considering the Class's realistic recovery and the risks of continued litigation.

With the aid of damages experts, Lead Plaintiff and Lead Counsel took into consideration the Class's likely recoverable damages when negotiating the Settlement Agreement. *See* Block Decl. at ¶¶ 48, 52. Because Section 11 presumes in the first instance that all declines in the price of a security during the class period are caused by the misstatements or omissions in a registration statement, the total possible recoverable damages before accounting for any of Defendants' ability to reduce those damages by showing negative causation would be either $535 or $777 million, depending on whether the Court concluded that April 15, 2019 – the date the State Action was filed – or May 17, 2019 – the date this action was filed, *see* ECF No. 1, controls for the purposes of Section 11(e)'s damages formula. *See* Block Decl. at ¶ 48. Lead Plaintiff, in consultation with his expert, believes it would have been difficult for the Class to have obtained relief at trial in an amount approaching either of these figures.

While a plaintiff in a Section 11 case need not prove loss causation, 15 U.S.C. § 77k(e), Section 11 provides defendants an affirmative defense if they can prove that some or all of the stock price declines were caused by something other than the misleading statements in the registration statement. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp. 2d 1132, 1170–72 (C.D. Cal. 2008). Defendants here had potentially strong arguments available to them to show that declines in the value of Lyft's stock during the class period were caused by something other than the alleged misstatements and omissions in Lyft's registration statement. That Section 11 only allows defendants to raise these loss causation arguments as an affirmative defense was helpful at the pleading stage, but would realistically have reduced the total amount of damages the class might have recovered at summary judgment or trial.

Counsel for Lead Plaintiff, in consultation with his financial expert and in reviewing the case law and the facts, estimated that recoverable damages would have likely been reduced by a significant amount based on Defendants' negative causation defenses. Indeed, Defendants' negative causation defenses could have eliminated the vast majority of Plaintiffs' statutory damages. Nonetheless, even when compared to the total possible, but exceedingly unlikely,

recovery of $777 million, the Settlement Agreement provides for recovery of at least 3.2% of estimated damages, which is well within the range of reasonableness. *See Vataj*, 2021 WL 5161927, at *6 (approving securities settlement of 2% of estimated damages as "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements."). For comparison, based on its own analysis of Securities Act class actions such as this one, Cornerstone Research found that in 2021 the median settlement was $8.9 million, or about 4.4% of statutory damages.[10] Accordingly, given the uncertainties and risks inherent in litigating through summary judgment and trial, and in particular the risk that Defendants would be able to successfully reduce the Class's damages, the Settlement Agreement is reasonable. *See Aqua Metals*, 2021 WL 4553578, at *10 (granting preliminary approval where risks included that "Defendants dispute the extent to which [the] stock price decline was attributable to the alleged fraud, as opposed to other company-specific bad news."); *see also In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007) ("Based on the risk of summary judgment . . . and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient or is not 'within the range of possible approval.'") (citation omitted).

Even if the Class prevailed at summary judgment and trial, Defendants would be entitled to appeal and recovery could be years away. *See Fleming*, 2021 WL 5447008, at *11. Moreover, it is entirely possible that Lead Plaintiff's claims would fail altogether at summary judgment or trial and the Class would recover nothing. *See, e.g.,* Order Granting Defendants' Motion for Summary Judgment, *Brokop v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW (D. Colo. Apr. 5, 2022) (granting defendants' motion for summary judgment and dismissing securities fraud class action with prejudice). While Lead Counsel believes the Class's case is strong, the Court has indicated some skepticism in Lead Plaintiff's falsity theory. *See* ECF No. 159-3 at 7 ("[I]t doesn't sound like the most deadlock falsity theory I've ever heard"). Accordingly, the Settlement Amount

---

[10] *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, CORNERSTONE RESEARCH, 7 (2022), *available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

is an excellent, immediate, and guaranteed result for the Class and therefore well within the range of reasonableness.

Moreover, Lead Counsel's informed recommendation to settle "should be given a presumption of reasonableness." *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.Cal.1979)). That the settlement negotiations occurred at an advanced stage of the litigation – after Defendants twice attempted to dispose of Lead Plaintiff's claims on the pleadings, *see* ECF Nos. 78, 152, after the Court certified the Class over Defendants' opposition, ECF No. 177, and with discovery nearly at its close, *see* ECF No. 196 (setting March 4, 2022 as close of fact discovery) – indicates that the Settlement Agreement is not collusive and that Lead Counsel understood the case's merits. *See Juul Labs*, 2022 WL 307942, at *6 (explaining that settlement occurring after extensive litigation and discovery indicates lack of collusion). Lead Counsel reviewed over 20,000 documents produced by Defendants and thousands more produced by third parties. Block Decl. at ¶¶ 31, 40. Lead Counsel also deposed the Lyft employee responsible for aggregating data regarding sexual violence on the Lyft platform. Block Decl. at ¶ 35. Lead Counsel therefore had an informed view of the merits and risks of this action and Lead Counsel's recommendation to settle this action should be given substantial deference.

The releases in the Stipulation do not render the Settlement Agreement unreasonable. In particular, it is not unreasonable to release claims against non-parties, including the Underwriters,[11] as part of the Settlement Agreement. As the Ninth Circuit recognized in *Class Plaintiffs*, a case in which non-party claims were similarly released by a settlement agreement despite parallel litigation against the non-party in state court, "a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*'" where those other clams "arise from the same

---

[11] The Underwriters, in addition to the Defendants in this action, are defendants in the State Action. *See* Block Decl. at ¶ 46.

common nucleus of operative fact." 955 F.2d at 1287–88 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982)) (emphasis original).

Here, there are particularly good reasons to include the Underwriters in the Settlement Agreement. Lyft is contractually obligated to fully indemnify the Underwriters for both their legal fees and liability. *See* Block Decl. at ¶ 47. Accordingly, including the Underwriters in the Settlement Agreement is necessary to fully dispose of Lyft's Securities Act liability. As such, to the extent the released claims in the Settlement Agreement differ from the claims certified by the Court, these differences are necessary and reasonable.

Lead Plaintiff, having considered the risks of continued litigation and the reasonableness of the Settlement Agreement's terms, respectfully submits that the Settlement Agreement is fair and should be granted preliminary approval.

### D.    The Court Should Approve the Form of Notice and Plan for Providing Notice to the Class and set a Final Approval Hearing Date.

The form, content, and plan for providing the proposed Notice and Summary Notice are reasonably calculated to inform Class Members of the terms of the Settlement Agreement and the options available to them. *See* Stipulation, Exs. A-1 and A-3. In the Ninth Circuit, "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *De La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ, 2017 WL 2670699, at *11 (N.D. Cal. June 21, 2017) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Here, the Notice and Summary notice are "written in plain English[ and] are easy to comprehend." *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2019 WL 6111378, at *5 (N.D. Cal. June 13, 2019). The Notice features a question-and-answer format that sets out the relevant information clearly and answers most questions Settlement Class Members are likely to have, but also provides contact information for Lead Counsel and the Claims Administrator should Class Members have any further questions. *See State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *7 (N.D. Cal. Aug. 29, 2014) (approving notice "consist[ing] of a series of questions and answers" that also "provides the contact information for

the lawyers representing each party."). Among other disclosures, the Notice objectively and neutrally explains the nature of this action, the definition of the Class, the binding effect of Final Judgment, and the procedures for seeking exclusion, objecting, and submitting claims. *See West*, 2006 WL 1652598, at *11 (finding notice that explained class members' options was adequate). The Summary Notice provides an abbreviated description of the Settlement Agreement and informs Class Members how they may access the settlement website to obtain the more detailed Notice. Courts have found that comparable notice programs meet the requirements of due process and Rule 23. *See, e.g.*, *Portal Software*, 2007 WL 1991529, at *7 (holding that "notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)") (citation omitted).

Furthermore, pursuant to the PSLRA, the Notice: states the Settlement Amount; provides a statement from the Settling Parties concerning issues about which they disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides Lead Counsel's contact information; and provides a statement explaining why the Settling Parties are proposing the settlement. *See* 15 U.S.C. §78u-4(a)(7). The Notice will also disclose the date, time, and location of the Settlement Hearing.

The Court should also find the plan for disseminating Notice to be adequate. Rule 23 requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal". Fed. R. Civ. P. 23(e)(1)(B); *see also Vataj*, 2021 WL 5161927, at *4 ("Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice."). Lead Plaintiff believes the plan for providing Notice, which is similar to the plan this Court previously approved to notify the Class that it had been certified, *see* ECF No. 203, is the best practicable plan under the circumstances. *See CashCall*, 2017 WL 2670699, at *11 (approving plan of notice substantially the "same as that which [was] used to notify Class Members that the Court had Certified the Class."). Individual notices will once again be "sent to all class members 'whose names and addresses may be ascertained through reasonable effort.'" *Aqua Metals*, 2021 WL 4553578, at *10 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). The proposed Claims Administrator, A.B. Data,

has already successfully caused over 250,000 notices of class certification to be sent to potential Class Members, and should therefore be well prepared to provide direct notice once again to as many class members as possible. *See* ECF No. 232 at ¶ 7.

If the Court grants preliminary approval, it must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or objections to the Settlement Agreement. Lead Plaintiff respectfully proposes the following schedule for the Court's consideration, as agreed to by the Settling Parties and set forth in the [Proposed] Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice to the Class, attached as Exhibit A to the Stipulation:

| **Event** | **Time for Compliance** |
| --- | --- |
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | No later than 21 days after entry of Preliminary Approval Order |
| Deadline for publishing summary notice in the *Wall Street Journal* and over a national newswire service | No later than 14 days after Notice Date |
| Deadline for filing final approval papers | 56 days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests or objections | 21 days prior to the Final Approval Hearing |
| Deadline for filing reply papers | 7 days prior to the Final Approval Hearing |
| Final Approval Hearing | As soon as practicable 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Proof of Claim and Release Forms | 120 calendar days after the Notice Date |

## IV.   CONCLUSION

For the reasons provided above, the Court should grant preliminary approval of the Settlement Agreement, direct notice to the Class, and schedule a hearing on final approval.

June 16, 2022

Respectfully submitted,

**Block & Leviton LLP**

/s/ Jeffrey C. Block
Jeffrey C. Block, *pro hac vice*
Jacob A. Walker (SBN 271217)
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

Vincent Cheng (SBN 230827)
100 Pine Street, Suite 1250
San Francisco, CA 94111
(510) 543-0489 phone
vincent@blockleviton.com

*Lead Counsel for Lead Plaintiff*
*Rick Keiner and the Class*

Lead Pl.'s Mot. for Prelim. Approval of Settlement
Case No. 4:19-cv-02690-HSG

20