1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| In re LYFT INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | CASE NO. 4:19-CV-02690-HSG<br><br>Assigned to: Hon. Haywood S. Gilliam, Jr.<br><br><u>CLASS ACTION</u><br><br>**STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT**<br><br>Action Filed:  May 17, 2019<br>Trial Date:  N/A |

1    This Stipulation and Agreement of Class Action Settlement, dated  June 8, 2022 (the

2  "Stipulation" or the "Settlement Agreement"), submitted pursuant to Rule 23 of the Federal

3  Rules of Civil Procedure ("Rules") and Rule 408 of the Federal Rules of Evidence, embodies a

4  settlement (the "Settlement") made and entered into by and among the following Settling Parties:

5  (i) Lead Plaintiff and certified class representative Rick Keiner ("Lead Plaintiff"), on behalf of

6  himself and each of the members of the Class, as defined in ¶¶ 1.3-1.4, *infra*, on the one hand,

7  and (ii) Defendants Lyft, Inc. ("Lyft"), Logan Green, John Zimmer, Brian Roberts, Prashant

8  (Sean) Aggarwal, Ben Horowitz, Valerie Jarrett, David Lawee, Hiroshi Mikitani, Ann Miura-Ko,

9  and Mary Agnes (Maggie) Wilderotter ("Defendants") (together, Lead Plaintiff and Defendants

10  are referred to as the "Settling Parties"), on the other hand, by and through their counsel of

11  record in the above-captioned litigation pending in the United States District Court for the

12  Northern District of California (the "Litigation").

13    This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve,

14  discharge, and settle the Released Claims, as defined in ¶ 1.22, *infra*, upon and subject to the

15  terms and conditions hereof and subject to the approval of the Court.  Throughout this

16  Stipulation, all capitalized terms used, but not immediately defined, have the meanings given to

17  them in Section IV, *infra*.

18  **I.    THE LITIGATION**

19    This case is currently pending before the Honorable Haywood S. Gilliam, Jr. in the

20  United States District Court for the Northern District of California (the "Court") and was filed on

21  behalf of a Class of all persons who purchased or otherwise acquired the common stock of Lyft

22  between March 28, 2019, and August 19, 2019, inclusive (the "Class Period") issued and

23  traceable to Lyft's March 28, 2019, Initial Public Offering ("IPO") Registration Statement.[1]

24

25

26  _____

27  [1] A case alleging Securities Act claims against Defendants is pending in the California Superior Court, County of San Francisco, captioned *In re Lyft, Inc. Securities Litigation*, Case No. CGC-19-575293 (the "State Action"). On January 25, 2022, Judge Andrew Y.S. Cheng of the

28  California Superior Court stayed the State Action on the ground that this Action and the State Action are "substantially identical"and denied plaintiffs' motion for class certification without prejudice.

1    The initial complaint in this Action was filed on May 17, 2019, alleging violations of

2    §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"). ECF No. 1. It was

3    brought on behalf of all investors who purchased or otherwise acquired Lyft common stock in

4    connection with the IPO.  *Id.*

5    On March 4, 2020, the Court appointed Lead Plaintiff and the firm of Block & Leviton

6    LLP as Lead Counsel.  ECF No. 64.

7    On April 16, 2020, Lead Plaintiff filed the Consolidated Amended Class Action

8    Complaint for Violations of Federal Securities Laws (the "First Amended Complaint"), alleging

9    violations of §§ 11, 12(a)(2), and 15 of the Securities Act. ECF No. 74.

10    The First Amended Complaint alleged that Defendants' Securities Act violations were

11    based on material misrepresentations, or omissions of material facts necessary to make other

12    statements not misleading regarding: 1) rider safety; 2) Lyft's market share; 3) bookings metrics

13    and first quarter losses; 4) bikeshare program; and 5) driver benefits. *Id.*

14    On May 14, 2020, Defendants moved to dismiss the First Amended Complaint.  *See* ECF

15    No. 78. Lead Plaintiff filed his opposition on June 11, 2020.  *See* ECF No. 84.[2] Defendants filed

16    their reply on July 9, 2020. *See* ECF No. 88.

17    On September 8, 2020, the Court issued an order ruling on Defendants' motion to dismiss

18    (the "MTD Order"). *See* ECF No. 96. The Court granted in part and denied in part Defendants'

19    motion to dismiss, partially upholding Lead Plaintiff's allegations concerning the omission of

20    information regarding rider safety and Lyft's bikeshare program. *Id.*

21    Defendants filed their answer to the remaining claims on October 2, 2020, denying all

22    material allegations. ECF No. 99.

23    ***Discovery:***

24    The PSLRA's automatic discovery stay was lifted on September 8, 2020, with the

25    issuance of the MTD Order. Discovery commenced shortly thereafter. On September 30, 2020,

26    counsel for the Settling Parties conducted a Rule 26(f) conference telephonically. *See* ECF No.

27    

28    ---
[2] Lyft's IPO Underwriters also filed a Motion to Dismiss, ECF No. 80, but Plaintiff voluntarily
dismissed without prejudice the Underwriters, and his Section 12(a)(2) claim, from this action,
ECF No. 85. "Underwriters" is defined in ¶ 1.32 below.

CASE NO. 4:19-CV-02690-HSG
STIPULATION AND AGREEMENT
OF CLASS ACTION SETTLEMENT

101. Also on September 30, 2020, Lead Plaintiff made his first production of documents. The Settling Parties lodged their Joint Rule 26(f) Report and [Proposed] Case Management Order with the Court on October 10, 2020, and exchanged Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) on November 13, 2020. *See id.* Defendants and Lead Plaintiff served their first document requests on October 14 and October 20, 2020, respectively. On October 27, 2020, the Settling Parties exchanged their first sets of interrogatories.[3] Lead Plaintiff made a second production of documents on December 21, 2020. Defendants made their first and second productions of documents on January 18 and 19, 2021. Defendants made subsequent productions on July 12, 2021; September 8, 2021; September 20, 2021; October 4, 2021; October 8, 2021; October 15, 2021; October 29, 2021; November 15, 2021; November 16, 2021; November 20, 2021; November 30, 2021; December 13, 2021; and December 24, 2021. Lead Plaintiff further served document requests on thirty-five third parties over the course of discovery. Additionally, on November 22, 2021, Lead Plaintiff served a subpoena on Defendants' counsel requesting counsel produce its communications with certain class members. On January 26, 2022, Defendants served a subpoena on Lead Plaintiff's counsel also requesting communications with class members.

The Settling Parties had numerous disputes over the course of discovery. The Settling Parties met and conferred on at least twenty-three occasions between January 4, 2021, and January 24, 2022. Lead Plaintiff filed a motion to compel document production on February 17, 2021. ECF No. 131. Defendant Lyft filed its own motion to compel interrogatory responses on March 9, 2021. ECF 139. Both motions were summarily dismissed after the disputes were referred to Magistrate Judge Laurel Beeler. *See* ECF Nos. 150, 151. The Settling Parties subsequently filed letter briefs regarding discovery disputes jointly, in accordance with Magistrate Judge Beeler's Standing Orders, on May 21, 2021, ECF No. 157, and September 2, 2021, ECF No. 198.

---

[3] Lead Plaintiff served his responses and objections to Defendant Lyft's First Set of Interrogatories on November 14, 2020. Defendants served their objections and responses to Lead Plaintiff's First Set of Interrogatories on December 21, 2020.

1    Lead Plaintiff sat for a deposition at Defendants' request on November 17, 2020. On

2    January 14, 2022, Lead Plaintiff, through his counsel, deposed Lyft employee Tanya Braun. By

3    January 19, 2022, Lead Plaintiff had noticed nineteen additional depositions.

4    ***Procedural Posture:***

5    After the Court's September 8, 2020, MTD Order, the Settling Parties engaged in

6    substantial motion practice. Lead Plaintiff filed a motion for class certification on September 25,

7    2020. ECF No. 98. Defendants filed their opposition to Lead Plaintiff's motion for class

8    certification on January 19, 2021, ECF No. 117, and Lead Plaintiff filed his reply on February 5,

9    2021, ECF No. 127. While Lead Plaintiff's motion for class certification was pending, on April

10    21, 2021, Defendants filed a motion for judgment on the pleadings.  ECF No. 152.  On May 24,

11    2021, Lead Plaintiff filed his opposition to Defendants' motion for judgment on the pleadings.

12    ECF 159.  On June 15, 2021, Defendants filed their reply in support of their motion for judgment

13    on the pleadings.  ECF 170.

14    On August 20, 2021, the Court entered orders 1) granting Lead Plaintiff's motion for

15    class certification, ECF No. 177, and 2) denying Defendants' motion for judgment on the

16    pleadings, ECF No. 179.

17    Lead Plaintiff moved for leave to file the Second Consolidated Amended Class Action

18    Complaint for Violations of Federal Securities Laws ("Second Amended Complaint") on

19    September 30, 2021, proposing to add claims stemming from an alleged deterioration in Lyft's

20    market share in the lead-up to the IPO. ECF No. 206. Defendants filed their opposition to Lead

21    Plaintiff's motion on December 20, 2021, ECF No. 230, and Lead Plaintiff filed his reply on

22    January 18, 2022, ECF No. 237.

23    The Court had not yet reached a decision on Lead Plaintiff's motion to file the Second

24    Amended Complaint as of February 8, 2022, when the Parties informed the Court that they had

25    reached an agreement-in-principle to settle the case on a classwide basis. As a result, Lead

26    Plaintiff's motion was terminated as moot without prejudice. ECF No. 242.  The Parties have

27    agreed for purposes of settlement to designate the proposed Second Amended Complaint as the

28    operative complaint.

*Settlement Negotiations:*

The Settling Parties participated in a formal mediation on November 2, 2021. David Murphy of Phillips ADR served as mediator. The session was not successful as the Settling Parties did not reach an agreement at this time. The Settling Parties resumed settlement discussions shortly after the formal mediation  and continued to have discussions among themselves in November and December 2021. They were still unable to reach a resolution of the matter. In January 2022, the parties reengaged Mr. Murphy to help facilitate a settlement and conducted additional negotiations with Mr. Murphy. Those negotiations still failed to produce a resolution. Then, in early February 2022, the Settling Parties again reengaged Mr. Murphy and on February 4, 2022, Mr. Murphy made a double-blind mediator's recommendation to settle the case for $25,000,000. On February 7, 2022, the Settling Parties reached an agreement in principle to settle the Litigation for the Settlement Amount, subject to the negotiation of the terms of a Stipulation and Agreement of Settlement, and approval by this Court.

On February 8, 2022, the Settling Parties filed a letter notifying the Court of the agreement-in-principle to settle the case. ECF No. 240.

## II.     CLAIMS OF LEAD PLAINTIFF AND BENEFITS OF THIS SETTLEMENT TO THE CLASS

Lead Plaintiff believes that the claims asserted in the Litigation have merit.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendants through trial. Lead Plaintiff and Lead Counsel also have taken into account the uncertain outcome and risks in connection with Lead Plaintiff's motion for leave to file the Second Amended Complaint (ECF No. 206), Defendants' anticipated motions for summary judgment, and persuading a jury at trial, especially in complex matters such as this Litigation, as well as the risks posed by post-trial motions, and potential appeals from the determination of those motions, or a jury verdict. Lead Plaintiff and Lead Counsel also are aware of the risks presented by the defenses to the securities law violations asserted in the Litigation, including Defendants' negative causation defenses, Defendants' arguments about the relevant measure of statutory damages, and Defendants'

arguments about materiality, all of which may significantly imperil or erode the Class's recovery.

Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class in light of the circumstances present here. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Class, and is fair, reasonable, and adequate.

## III.    THE RELEASED DEFENDANT PARTIES' DENIALS OF WRONGDOING AND LIABILITY

The Released Defendant Parties, as defined in ¶ 1.24, have denied, and continue to deny, any and all allegations and claims asserted by Plaintiffs in the Litigation. As set forth in ¶ 9.6 below, this Stipulation does not constitute, and shall not be offered or received against any Released Defendant Party as evidence of, or construed as or deemed to be evidence of, any concession or admission by any Released Defendant Party with respect to the truth of any fact alleged or the validity of any claim in this Litigation. Defendants maintain that they have meritorious defenses to all of the claims alleged in the Litigation, including that the remaining challenged statements were not materially false or misleading, the alleged "correction" of the challenged statements was not the cause of any damages to the Class, and many if not most of the Class Members had knowledge of the supposedly concealed or misrepresented facts, and thus no claims against Defendants. As such, the Released Defendant Parties are entering into the Settlement solely to eliminate the burden, expense, and uncertainties of further litigation.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for himself and the members of the Class), on the one hand, and Defendants, on the other hand, by and through their respective counsel of record, that, subject to the approval of the Court, pursuant to Rule 23(e), in consideration of the benefits flowing to the parties from the Settlement set forth herein, the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows:

1. **Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1 "Authorized Claimant" means any member of the Class who submits a timely and valid Proof of Claim and Release form and whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2 "Claims Administrator" means the firm of A.B. Data, Ltd.

1.3 "Class" means all persons and entities who purchased or otherwise acquired the common stock of Lyft issued and traceable to the IPO Registration Statement (between March 28, 2019, and August 19, 2019). Excluded from the Class are Defendants and their families, and the officers and directors of Lyft from March 18, 2019, through August 19, 2019, their affiliates, members of their immediate families and their legal representatives, heirs, successors or assigns, the Underwriters (as defined in ¶ 1.32 below) and their officers and directors, and any entities in which the foregoing excluded Persons hold a majority ownership interest. Also excluded from the Class is any Person who timely and validly seeks exclusion from the Class, or who have already done so, or whose request for exclusion is accepted by the Court.

1.4 "Class Member" means a Person who falls within the definition of the Class as set forth in ¶ 1.3 above.

1.5 "Class Period" means the period from March 28, 2019, through August 19, 2019, inclusive.

1.6 "Court" means the United States District Court for the Northern District of California.

1.7 "Defendants" means Lyft, Inc., Logan Green, John Zimmer, Brian Roberts, Prashant (Sean) Aggarwal, Ben Horowitz, Valerie Jarrett, David Lawee, Hiroshi Mikitani, Ann Miura-Ko, and Mary Agnes (Maggie) Wilderotter.

1.8 "Effective Date" means the first date by which all of the events and conditions specified in ¶ 8.1 of the Stipulation have been met and have occurred.

1.9 "Escrow Account" means the account controlled by the Escrow Agent into which the Settlement Amount shall be deposited by or on behalf of Defendants as described in ¶ 3.1

below.

1.10    "Escrow Agent" means The Huntington National Bank, or its successor(s).

1.11    "Fee and Expense Award" is defined in ¶ 7.1 below.

1.12    "Final" means when the last of the following events shall occur with respect to the Judgment approving the Settlement, in the form of Exhibit B attached hereto: (i) the expiration of the time to file a motion to alter or amend the Judgment under Rule 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 30th day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such 30th day; (iii) if a motion to alter or amend is filed under Rule 59(e) or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation; and (iv) notice of such Judgment has been provided to the California Superior Court, County of San Francisco, where the State Action is pending. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and expenses or any Plan of Allocation of the Settlement Fund.

1.13    "Judgment" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B, or such other substantially similar form agreed to by the Settling Parties.

1.14    "Lead Counsel" means Block & Leviton LLP.

1.15    "Lead Plaintiff" means Rick Keiner.

1.16    "Net Settlement Fund" means the Settlement Fund less: (i) the amount of the Fee

1   and Expense Award and any award to Lead Plaintiff as allowed under the PSLRA, if and to the

2   extent allowed by the Court; (ii) Notice and Administration Expenses; (iii) Taxes and Tax

3   Expenses; and (iv) any other fees or expenses approved by the Court.

4        1.17   "Notice" means the Notice of Pendency and Proposed Settlement of Class Action

5   to be sent to Class Members, which, subject to approval of the Court, shall be substantially in the

6   form attached hereto as Exhibit A-1.

7        1.18   "Notice and Administration Expenses" means the fees and expenses reasonably

8   and actually incurred in connection with providing notice, locating Class Members, assisting

9   with the filing of claims, administering and distributing the Net Settlement Fund to Authorized

10  Claimants, processing claim forms, and paying escrow fees and costs, if any.

11       1.19   "Notice Order" is defined in ¶ 4.1 below.

12       1.20   "Person" means a natural person, individual, corporation, partnership, limited

13  partnership, association, joint stock company, estate, legal representative, trust, unincorporated

14  association, government or any political subdivision or agency thereof, and any business or legal

15  entity and his, her or its spouses, heirs, predecessors, successors, representatives, or assignees.

16       1.21   "Plan of Allocation" means a plan or formula of allocation of the Net Settlement

17  Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan

18  of Allocation is not part of the Stipulation and the Released Defendant Parties shall have no

19  responsibility or liability with respect to the Plan of Allocation.

20       1.22   "Released Claims" means any and all claims and causes of action of every nature

21  and description whatsoever as against the Released Defendant Parties that have been or could

22  have been asserted in this action, the State Action, or in any other action that (a) arise out of, are

23  based upon, or relate in any way to any of the allegations, acts, transactions, facts, events,

24  matters, occurrences, representations or omissions involved, set forth, alleged or referred to in

25  this action, or which could have been alleged in this action, or (b) arise out of, are based upon, or

26  relate in any way to the purchase, acquisition, holding, sale, or disposition of any Lyft securities

27  acquired pursuant and/or traceable to Lyft's  Registration Statement, including Unknown Claims

28  as defined in ¶ 1.33 hereof, whether arising under federal, state, local, common, statutory,

1    administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether

2    fixed or contingent, whether foreseen or unforeseen, whether accrued or unaccrued, whether

3    liquidated or unliquidated, whether matured or unmatured, whether direct, representative, class,

4    or individual in nature. For the avoidance of doubt, Released Claims shall include (but shall not

5    be limited to): (1) all claims that have been asserted in the Second Amended Complaint, ECF

6    No. 206-2; (2) the Consolidated Amended Class Action Complaint, ECF No. 74: (3) the initial

7    complaint, dated May 17, 2019, ECF No. 1; and (4) all current and prior complaints in the State

8    Action.

9            1.23    "Released Defendant Claims" means all claims and causes of action of every

10   nature and description, whether known or Unknown Claims, whether arising under federal, state,

11   local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at

12   law or in equity, whether fixed or contingent, whether foreseen or unforeseen, whether accrued

13   or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether direct,

14   representative, class, or individual in nature that arise out of or relate in any way to the

15   institution, prosecution, or settlement of the claims against Defendants, which Defendants will

16   release as against the Released Plaintiff Parties (as defined below) upon the Effective Date.

17   Released Defendant Claims shall not include any claims relating to the enforcement of the

18   Settlement.

19           1.24    "Released Defendant Parties" means: (i) Defendants; and (ii) each of their

20   respective family members, and their respective general partners, limited partners, principals,

21   shareholders, joint venturers, members, officers, directors, managers, managing directors,

22   supervisors, employees, contractors, consultants, auditors, accountants, financial advisors,

23   professional advisors, investment bankers, Underwriters (as defined in ¶ 1.32 below),

24   representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors,

25   successors, assigns, heirs, executors, administrators, and any controlling person thereof in their

26   capacities as such.

27           1.25    "Released Plaintiff Parties" means: (i) Lead Plaintiff and other Class Members;

28   and (ii) each of their respective family members, and their respective general partners, limited

1  partners, principals, shareholders, joint venturers, members, officers, directors, managers,

2  managing directors, supervisors, employees, contractors, consultants, auditors, accountants,

3  financial advisors, professional advisors, investment bankers, representatives, insurers, trustees,

4  trustors, agents, attorneys, including Lead Counsel, professionals, predecessors, successors,

5  assigns, heirs, executors, administrators, and any controlling person thereof, in their capacities as

6  such.

7     1.26 "Settlement Amount" means Twenty-five Million U.S. Dollars ($25,000,000.00).

8     1.27 "Settlement Fund" means the Settlement Amount, together with all interest and

9  income earned thereon after being transferred to the Escrow Account.

10     1.28 "Settlement Hearing" is defined in ¶ 4.3 below.

11     1.29 "Settling Parties" means, collectively, Lead Plaintiff on behalf of himself and the

12  Class Members, and Defendants.

13     1.30 "State Action" means the consolidated case currently pending before the

14  California Superior Court, County of San Francisco, captioned *In re Lyft, Inc. Securities*

15  *Litigation*, Case No. CGC-19-575293.

16     1.31 "Summary Notice" means the Summary Notice, which, subject to approval of the

17  Court, shall be substantially in the form attached hereto as Exhibit A-3.

18     1.32 "Underwriters" means the underwriters of Lyft's initial public offering. The

19  Underwriters include J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, Jefferies

20  LLC, UBS Securities LLC, Stifel, Nicolaus & Company, Incorporated, RBC Capital Markets,

21  LLC, KeyBanc Capital Markets Inc., Cowen and Company, LLC, Raymond James & Associates,

22  Inc., Canaccord Genuity LLC, Evercore Group L.L.C., Piper Sandler & Co., JMP Securities

23  LLC, Wells Fargo Securities, LLC, KKR Capital Markets LLC, Academy Securities, Inc.,

24  Blaylock Van, LLC, Penserra Securities LLC, Siebert Williams Shank & Co., LLC, CastleOak

25  Securities, L.P., C.L. King & Associates, Inc., Drexel Hamilton, LLC, Great Pacific Securities,

26  Loop Capital Markets LLC, Mischler Financial Group, Inc., Samuel A. Ramirez & Company,

27  Inc., R. Seelaus & Co., LLC, and Tigress Financial Partners LLC. Two of the underwriters of

28  Lyft's initial public offering were originally named as defendants in this action and the State

Action as "Siebert Cisneros Shank & Co., LLC" and "The Williams Capital Group, L.P.,," respectively.  They subsequently were merged into the renamed entity of Siebert Williams Shank & Co., LLC.  Piper Sandler & Co. is the current name of one of the underwriters of Lyft's initial public offering that was originally named as a defendant in this action and the State Action as "Piper Jaffray & Co."

1.33    "Unknown Claims" means any Released Claims or Released Defendant Claims that Defendants, Lead Plaintiff, or any other Class Member does not know or suspect to exist in such party's favor at the time of the release, which, if known by such party, might have affected such party's decision to settle or release claims.  Upon the Effective Date of the Settlement, Defendants, Lead Plaintiff and the Class shall expressly waive, and be deemed to have waived, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date of the Settlement, Defendants, Lead Plaintiff, and the Class shall expressly waive, and be deemed to have waived, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by law of any state or territory of the United States, or principle of common law that are similar, comparable, or equivalent to California Civil Code § 1542.  Defendants, Lead Plaintiff, and the Class shall be deemed to have, and by operation and order of final judgment shall have fully, finally, and forever settled and released all Released Claims, as the case may be known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of different or additional facts.

**2.     CAFA Notice**

2.1    The Defendants shall determine the form of notice to be provided for the purpose of satisfying the requirements of the Class Action Fairness Act ("CAFA Notice"), 28 U.S.C. §

1   1715, and the identity of those who will receive the CAFA Notice.  Pursuant to CAFA, no later

2   than ten (10) calendar days after the Settlement Agreement is filed with the Court, Defendants, at

3   their own cost, shall serve proper notice of the proposed Settlement upon those who are entitled

4   to such notice pursuant to CAFA.

5       **3.      The Settlement**

6           **a.  The Settlement Fund**

7       3.1     Defendant Lyft, Inc. shall pay or shall cause to be paid by its insurers the

8   Settlement Amount. No other Defendant or Underwriter (as defined in ¶ 1.32 above) shall pay, or

9   be liable to pay, any part of the Settlement Amount. Five Hundred Thousand Dollars ($500,000)

10  shall be paid into an interest-bearing escrow account controlled by Lead Counsel to cover

11  reasonable class notice costs within ten business days after the latter of (i) entry of an order by

12  the Court preliminarily approving the Settlement; and (ii) Lead Counsel having sent Defendants

13  customary written instructions in a form acceptable to Lyft and its insurers to pay the Settlement

14  Amount by check or wire into the escrow accounts, along with Form W-9s for the escrow

15  accounts. Lyft shall then pay or cause to be paid half of the remainder of the Settlement Amount

16  at least five (5) business days prior to the hearing on the motion for final approval of the

17  settlement, and half of the remainder of the Settlement Amount within ten (10) business days of

18  the Court granting the motion for final approval (as defined in ¶ 8.1 below).

19      3.2     Lead Plaintiff shall have the right, but not the obligation, to terminate the

20  Settlement twenty (20) calendar days after any failure of Defendant Lyft, Inc. to timely pay or

21  cause to be paid the Settlement Amount in accordance with ¶ 3.1 above.

22      3.3     The payments described in ¶ 3.1 above are the only payments to be made by or on

23  behalf of Defendants in connection with this Settlement.

24          **b.  The Escrow Agent**

25      3.4     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶ 3.1

26  hereof in instruments backed by the full faith and credit of the United States Government or fully

27  insured by the United States Government or an agency thereof and shall reinvest the proceeds of

28  these instruments as they mature in similar instruments at their then-current market rates.  All

costs and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund.

3.5     The Escrow Agent shall not disburse the Settlement Fund until after the Effective Date, and shall not disburse the Net Settlement Fund until after the Released Defendant Parties provide written acknowledgement through counsel, which shall not be unreasonably withheld, that the Judgment has been afforded its full preclusive effect in the State Action, including but not limited to as a result of denial of class certification or other order or judgment disposing of the class claims in the State Action and exhaustion of any appeal rights.

3.6     Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to, the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

3.7     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

3.8     Prior to the Effective Date, Lead Counsel, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $500,000.00 in Notice and Administration Expenses.  Prior to the Effective Date, payment of any Notice and Administration Expenses exceeding $500,000.00 shall require notice to, and agreement from, the Defendants, through Defendants' counsel, which agreement shall not be unreasonably refused.  Subsequent to the Effective Date, without further approval by Defendants or the Court, the Settlement Fund may be used by Lead Counsel to pay all reasonable and necessary Notice and Administration Expenses.

**c.  Taxes**

3.9     (a)     The Settling Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry

out the provisions of this ¶ 3.9, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file, or cause to be filed, all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)).  Such returns (as well as the election described in ¶ 3.9(a) hereof) shall be consistent with this ¶ 3.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned on the Settlement Amount shall be paid out of the Settlement Fund as provided in ¶ 3.9(c) hereof.

(c)     All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned on the Settlement Amount, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned on the Settlement Amount for any period during which the Settlement Amount does not qualify as a "Qualified Settlement Fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this ¶ 3.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 3.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Defendant Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Escrow Account without prior order from the Court

1   or approval of Defendants, and the Escrow Agent shall be obligated (notwithstanding anything

2   herein to the contrary) to withhold from distribution to Authorized Claimants any funds

3   necessary to pay such amounts, including the establishment of adequate reserves for any Taxes

4   and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury

5   Regulation § 1.468B-2(l)(2)); neither the Released Defendant Parties nor their counsel are

6   responsible nor shall they have any liability therefor.  The Settling Parties hereto agree to

7   cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the

8   extent reasonably necessary to carry out the provisions of this ¶ 3.9.

9           (d)     Except as required by ¶ 3.1 concerning payment of the Settlement

10  Amount, the Released Defendant Parties are not responsible for Taxes, Tax Expenses, Notice

11  and Administration Expenses, nor shall they be liable for any claims with respect thereto.

12                  **d.  Termination of Settlement**

13      3.10    In the event the Settlement: (i) is not approved; (ii) is terminated, canceled, or

14  fails to become effective for any reason, including, without limitation, in the event the Judgment

15  is reversed or vacated following any appeal taken therefrom; (iii) is not effective because the

16  conditions specified in ¶¶ 3.5 and 6.7 do not occur; or (iv) is successfully collaterally attacked,

17  the Settlement Fund (including accrued interest) less expenses actually incurred or due and

18  owing for Notice and Administration Expenses, Taxes or Tax Expenses, pursuant to ¶¶ 3.8 or

19  3.9, respectively, shall be refunded to such Persons that paid the Settlement Amount pursuant to

20  written instructions from Defendants' counsel.

21      **4.      Notice Order and Settlement Hearing**

22      4.1     Promptly after execution of this Stipulation, Lead Counsel shall submit the

23  Stipulation together with its exhibits (the "Exhibits") to the Court and shall apply for entry of an

24  order (the "Notice Order"), in the form of Exhibit A attached hereto, requesting, among other

25  things, the preliminary approval of the Settlement set forth in the Stipulation and approval of the

26  mailing of the Notice and publication of the Summary Notice, in the forms of Exhibits A-1 and

27  A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the

28  Stipulation, the proposed Plan of Allocation, the general terms of the application for the Fee and

1  Expense Award, and the date of the Settlement Hearing (defined in ¶ 4.3 below).

2       4.2     It shall be the Claims Administrator's responsibility, under supervision of Lead

3  Counsel, to disseminate the Notice and Summary Notice to the Class in accordance with this

4  Stipulation and as ordered by the Court.  Class Members shall have no recourse as to the

5  Released Defendant Parties with respect to any claims they may have that arise from any failure

6  of the notice process.

7       4.3     Lead Counsel shall request that after Notice is given to the Class, the Court hold a

8  hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth

9  herein.  At or after the Settlement Hearing, Lead Counsel also shall request that the Court

10  approve the proposed Plan of Allocation and the Fee and Expense Award.

11       **5.     Releases**

12       5.1     Upon the Effective Date, Lead Plaintiff and each of the Class Members shall be

13  deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released,

14  relinquished, and discharged against the Released Defendant Parties (whether or not such Class

15  Member executes and delivers a Proof of Claim and Release form) any and all Released Claims

16  (including, without limitation, Unknown Claims).  Claims to enforce the terms of this Stipulation

17  are not released.  The Settling Parties acknowledge, and the Class Members shall be deemed by

18  operation of law to acknowledge, that the waiver of Unknown Claims, and of the provisions,

19  rights and benefits of § 1542 of the California Civil Code, was bargained for and is a key

20  element of the Settlement of which the release in this paragraph is a part.

21       5.2     Upon the Effective Date, Lead Plaintiff and each of the Class Members and

22  anyone claiming through or on behalf of them, shall be permanently barred and enjoined from

23  the commencement, assertion, institution, maintenance, prosecution, or enforcement against any

24  of the Released Defendant Parties of any action or other proceeding in any court of law or equity,

25  arbitration tribunal, administrative forum, or forum of any kind, asserting any of the Released

26  Claims.

27

28

5.3     The Proof of Claim and Release to be executed by Class Members shall release all Released Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto.

5.4     Upon the Effective Date, Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against the Released Plaintiff Parties, all Released Defendant Claims.  Claims to enforce the terms of this Stipulation are not released.

**6.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

6.1     The Claims Administrator, subject to such supervision and direction of the Court or Lead Counsel as may be necessary or as circumstances may require, shall provide notice of the Settlement to the Class, shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

6.2     In accordance with the schedule set forth in the Notice Order, Lead Counsel will cause the Claims Administrator to mail to all shareholders of record, as previously identified by the Claims Administrator during the Notice period associated with the Court's Order granting certification of the class, the Notice, substantially in the form of Exhibit A-1 attached hereto, and a Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto.  The Notice shall set forth the terms of the Stipulation, including the proposed Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses; the date and time of the Settlement Hearing; the right to object to the Settlement, proposed Plan of Allocation, or request for fees and expenses; the right to appear at the Settlement Hearing; and the right to request exclusion from the Class.  The Notice and Proof of Claim and Release form shall also be posted on the Claims Administrator's website.  In accordance with the schedule set forth in the Notice Order, the Summary Notice, substantially in the form of Exhibit A-3 attached hereto, will also be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.  The cost of providing such notice shall be paid out of the Settlement Fund.

6.3     The Settlement Fund shall be applied as follows:

(a)     to pay all reasonable Notice and Administration Expenses;

1              (b)      to pay the Taxes and Tax Expenses described in ¶ 3.9 hereof;

2              (c)      to pay the Fee and Expense Award;

3              (d)      to pay any award to Lead Plaintiff as allowed under the PSLRA, subject to

4 the approval of the Court; and

5              (e)      after the Effective Date and the occurrence of the conditions specified in

6 ¶¶ 3.5 and 6.7, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the

7 Stipulation, the Plan of Allocation, or the Court.

8       6.4     Upon the later of the Effective Date and the occurrence of the conditions specified

9 in ¶¶ 3.5 and 6.7, and in accordance with the terms of the Stipulation, the Plan of Allocation, or

10 such further approval and further order(s) of the Court as may be necessary or as circumstances

11 may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to

12 and in accordance with the following.

13      6.5     Each Person claiming to be an Authorized Claimant shall be required to submit to

14 the Claims Administrator a completed Proof of Claim and Release, substantially in the form of

15 Exhibit A-2 attached hereto, postmarked or submitted electronically by no later than ninety (90)

16 calendar days after the Notice Date (as defined in Exhibit A attached hereto), or such other time

17 as the Court may set, signed under penalty of perjury and supported by such documents as are

18 specified in the Proof of Claim and Release.

19      6.6     Except as otherwise ordered by the Court, all Class Members who fail to submit a

20 Proof of Claim and Release by such date, or who submit a Proof of Claim and Release that is

21 rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the

22 Settlement set forth herein, but will in all other respects be subject to and bound by the

23 provisions of the Stipulation, the releases contained herein, and the Judgment.  Notwithstanding

24 the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-

25 submitted claims for processing by the Claims Administrator, so long as the distribution of the

26 Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No person shall

27 have any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator by reason of

28 the decision to exercise or not exercise such discretion.

6.7     The Claims Administrator shall calculate the claims of Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her, or its *pro rata* share of the Net Settlement Fund, provided, however, that no disbursements of the Net Settlement Fund shall be made prior to the Released Defendant Parties' written acknowledgement, through counsel, that the Judgment has been afforded its full preclusive effect in the State Action, and, provided further, such acknowledgment shall not be unreasonably withheld, as provided in ¶ 3.5.

6.8     Other than in the event of the termination of the Settlement pursuant to ¶ 3.10, Defendants shall not have a reversionary interest in the Net Settlement Fund.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the initial date of distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, allocate such balance among Authorized Claimants in an equitable and economic fashion.  These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to the National Women's Law Center.

6.9     The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

6.10     Defendants shall take no position with respect to the Plan of Allocation or any other such plan as may be approved by the Court.  Defendants will have no involvement in reviewing or challenging claims.

6.11     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the

1   Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the

2   Settlement set forth therein, or any other orders entered pursuant to the Stipulation.  Class

3   Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether

4   the Court disapproves or modifies the Plan of Allocation.

5          6.12    No Person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants,

6   Defendants' counsel, any of the other Released Plaintiff Parties or  Released Defendant Parties,

7   or their respective counsel, or the Claims Administrator based on distributions made

8   substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of

9   Allocation, or otherwise as further ordered by the Court. This does not include any claim by any

10  party for breach of this Stipulation.

11         **7.     Lead Counsel's Attorneys' Fees and Expenses**

12         7.1     Lead Counsel may submit an application or applications to the Court (the "Fee

13  and Expense Application") for distributions from the Settlement Fund for: (a) an award of

14  attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus

15  (c) interest on both amounts as earned by the Settlement Fund (until paid) as may be awarded by

16  the Court.  Any and all such fees, expenses and charges awarded by the Court (the "Fee and

17  Expense Award") shall be payable solely out of the Settlement Fund.  Lead Plaintiff may submit

18  an application consistent with the PSLRA based on its representation of the Class.  Any such

19  amounts awarded to Lead Plaintiff shall be paid from the Settlement Fund.

20         7.2     The Fee and Expense Award shall be paid to Lead Counsel from the Settlement

21  Fund, as ordered, immediately upon entry of an order by the Court granting such award.  In the

22  event that the Effective Date does not occur, or the Net Settlement Fund is not distributed

23  because the conditions specified in ¶ 3.5 and ¶ 6.7 have not been satisfied, or the order making

24  the Fee and Expense Award pursuant to ¶ 7.1 is reversed or modified by final non-appealable

25  order, or if this Stipulation is cancelled or terminated for any reason, and in the event any part of

26  the Fee and Expense Award has been paid, then Lead Counsel shall, in an amount consistent

27  with such reversal, modification, cancellation or termination, refund such fees or expenses to the

28  Settlement Fund, plus interest earned thereon at the same rate as earned on the Settlement Fund,

within thirty (30) calendar days from receiving notice from Defendants' counsel or from a court of competent jurisdiction.

7.3     The procedure for and the allowance or disallowance by the Court of the Fee and Expense Award, or the award to the Lead Plaintiff, to be paid out of the Settlement Fund, are not part of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or an award to Lead Plaintiff, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation (including the releases contained herein).

7.4     Neither the Released Defendant Parties nor Defendants' insurers shall have any responsibility for or liability with respect to the payment of any Fee and Expense Award to Lead Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

**8.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

8.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b)     the Settlement Amount has been deposited into the Escrow Account as provided by ¶ 3.1 hereof;

(c)     Defendants have not exercised their option to terminate the Stipulation pursuant to ¶ 8.3 hereof;

(d)     the Court has entered the Notice Order, as required by ¶ 4.1 hereof;

(e)     the Court has entered the Judgment that dismisses with prejudice the Litigation, as to the Settling Parties, as set forth above; and

(f)     the Judgment has become Final, as defined in ¶ 1.12 hereof.

8.2     This is not a claims-made settlement.  As of the Effective Date, Defendant Lyft, its insurance carriers, and/or any other such persons or entities funding the Settlement on Lyft's

1  behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for

2  any reason except in the event that the conditions specified in ¶¶ 3.5 and 6.7 do not occur.  Upon

3  the occurrence of all of the events referenced in ¶¶ 8.1 3.5, and 6.7 hereof, any and all remaining

4  interest or right of Lyft, if any, in or to the Settlement Fund shall be absolutely and forever

5  extinguished.  If all of the conditions specified in ¶¶ 8.1 3.5, and 6.7 hereof are not met, then the

6  Stipulation shall be canceled and terminated subject to ¶ 8.4 hereof unless Lead Counsel and

7  counsel for Defendants mutually agree in writing to proceed with the Settlement.

8         8.3     If, prior to the Settlement Hearing, Persons who otherwise would be members of

9  the Class have timely requested exclusion from the Class in accordance with the provisions of

10  the Notice Order and the Notice given pursuant thereto, and such Persons in the aggregate

11  purchased a number of shares of Lyft common stock during the Class Period in an amount

12  greater than the sum specified (the "Opt-Out Threshold") in a separate Supplemental Agreement

13  Regarding Requests for Exclusion ("Supplemental Agreement") executed between Lead Plaintiff

14  and Lyft, Lyft shall have the option to terminate this Stipulation and Settlement in accordance

15  with the procedures set forth in the Supplemental Agreement.  The Supplemental Agreement is

16  incorporated by reference into this Stipulation.  The Supplemental Agreement will not be filed

17  with the Court unless and until a dispute between Lead Plaintiff and Lyft concerning its

18  interpretation or application arises.  The Opt-Out Threshold may be disclosed to the Court for

19  purposes of approval of the Settlement, as may be required by the Court, but such disclosure

20  shall be carried out to the fullest extent possible in accordance with the practices of the Court so

21  as to maintain the Opt-Out Threshold as confidential.  Copies of all requests for exclusion

22  received, together with copies of all written revocations of requests for exclusion, shall be

23  promptly delivered to Defendants' counsel by Lead Counsel.

24         8.4     Unless otherwise ordered by the Court, in the event the Stipulation shall

25  terminate, or be canceled, or shall not become effective for any reason, within five (5) business

26  days after written notification of such event is sent by counsel for Defendants or Lead Counsel to

27  the Escrow Agent, the Settlement Fund, less reasonable Notice and Administration Expenses,

28  Taxes, and Tax Expenses reasonably and actually incurred pursuant to ¶¶ 3.8 or 3.9 hereof, shall

be refunded pursuant to written instructions from Defendants' counsel.  At the request of counsel

for Defendants, the Escrow Agent or its designee shall apply for any tax refund owed on the

Settlement Fund and pay the proceeds, after deduction of any expenses incurred in connection

with such application(s) for refund, at the written direction of Defendants' counsel.

8.5     In the event that the Stipulation is not approved by the Court or the Settlement set

forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the

Settling Parties shall not forfeit or waive any factual or legal defense or contention in the

Litigation and shall be restored to their respective positions in the Litigation as of February 7,

2022.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.1-

1.33, 3.8-3.10, **Error! Reference source not found.**, 8.4-8.5, 9.3, 9.5, and 9.6 hereof, shall have

no further force and effect with respect to the Settling Parties and shall not be used in this

Litigation or in any other proceeding for any purpose, and any judgment or order entered by the

Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*,

and the Settling Parties shall be deemed to return to their status as of February 7, 2022, and shall

be required to present an amended pre-trial schedule to the Court.  No order of the Court or

modification or reversal on appeal of any such order of the Court concerning the Plan of

Allocation or the amount of any attorneys' fees and expenses, and interest awarded by the Court

to Lead Counsel, shall constitute grounds for cancellation or termination of the Stipulation.

8.6     In the event of a final order of a court of competent jurisdiction, not subject to any

further proceedings, determining the transfer of the Settlement Fund, or any portion thereof, by

or on behalf of any Defendant to be a preference, voidable transfer, fraudulent transfer or similar

transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and

any portion thereof is required to be refunded and such amount is not promptly deposited in the

Settlement Fund by or on behalf of any other Defendant, then, at the election of Lead Counsel, as

to the Defendant as to whom such order applies, the Settlement may be terminated and the

releases given and the judgment entered in favor of such Defendant pursuant to the Settlement

shall be null and void.  In such instance, the releases given and the judgment entered in favor of

other Defendants shall remain in full force and effect.  Alternatively, Lead Counsel may elect to

1    terminate the entire Settlement as to all Defendants and all the releases given and the judgments

2    entered in favor of the Defendants pursuant to the Settlement shall be null and void, and Lead

3    Plaintiff may proceed as if the Settlement was never entered into.

4        **9.    Miscellaneous Provisions**

5        9.1    Defendants shall, as soon as reasonably practicable following entry of Judgment,

6    move for the denial with prejudice of class certification in the State Action.

7        9.2    The Settling Parties: (a) acknowledge that it is their intent to consummate this

8    Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and

9    implement all terms and conditions of the Stipulation and to exercise their best efforts to

10   accomplish the foregoing terms and conditions of the Stipulation expeditiously, including, but

11   not limited to, cooperating to ensure that the Judgment is afforded its full preclusive effect in the

12   State Action.

13       9.3    The Settlement will not be conditioned upon the obtaining of or any judicial

14   approval of any releases between or among Defendants or third parties.

15       9.4    The Settling Parties intend this Settlement to be a final and complete resolution of

16   all disputes between them with respect to the Litigation.  The Settlement and all negotiations,

17   discussions, and proceedings leading up to and in connection herewith shall not be deemed to

18   constitute a presumption, concession, or an admission by any Settling Party or any of the

19   Released Defendant Parties of any fault, liability, or wrongdoing by it, or as to the merits of any

20   claim or defense.

21       9.5    The Settling Parties and their counsel mutually agree that, throughout the course

22   of this Litigation, all parties and their counsel complied with the provisions of Rule 11 relating to

23   the prosecution, defense or settlement of the Litigation, and the Judgment shall contain a finding

24   that all Settling Parties and their counsel complied with the requirements of Rule 11 with respect

25   to the institution, prosecution, defense, and resolution of the Litigation.  The Settling Parties

26   agree that the Settlement Amount and the other terms of the Settlement were negotiated in good

27   faith at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily

28   after consultation with competent legal counsel.

9.6     Neither the Stipulation nor the Settlement contained herein, nor any negotiations, discussions, proceedings or act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Defendant Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of Released Defendant Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Released Defendant Parties, Lead Plaintiff, Class Members, and Lead Counsel may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or in connection with any proceeding to enforce the terms of this Stipulation.

9.7     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of documents and information shall survive this Stipulation, pursuant to its terms.

9.8     The Settling Parties shall, in good faith, endeavor to communicate the terms of the Settlement, if at all, in a manner that is respectful of the fact that no final adjudication of fault was determined by a court or a jury.  The Settling Parties agree that, unless required by law, no press release or other written public statements purporting to characterize the Settlement may be made without the approval of counsel for all parties, which approval shall not unreasonably be withheld.  A party intending to issue a press release or other written public statement purporting to characterize the Settlement shall provide a draft of the statement to counsel for the other parties at least 24 hours in advance of such statement.  For the avoidance of doubt, nothing in this paragraph shall be construed as prohibiting, or placing restrictions on, the public disclosure of the fact of, terms of, or Court-approved notice of the Settlement, including on Plaintiffs' counsel's firm websites.

9.9     All of the Exhibits to the Stipulation are material and integral parts hereof and are

1   fully incorporated herein by this reference.

2        9.10   This Stipulation shall not be construed more strictly against one party than

3   another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel

4   for one of the parties, it being recognized that it is the result of arm's-length negotiations

5   between the parties and that all parties have contributed substantially and materially to the

6   preparation of this Stipulation.

7        9.11   The Stipulation may be amended or modified only by a written instrument signed

8   by or on behalf of all Settling Parties or their respective successors-in-interest.

9        9.12   No waiver of any term or provision of this Settlement Agreement, or of any

10  breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by

11  or on behalf of all Settling Parties or their respective successors-in-interest.  No waiver of any

12  term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder,

13  shall be construed as a waiver of the same or any other term or provision or of any previous or

14  subsequent breach thereof.

15       9.13   The Stipulation and the Exhibits attached hereto (together with the Supplemental

16  Agreement referred to in ¶ 8.3) constitute the entire agreement among the Settling Parties and no

17  representations, warranties, or inducements have been made to any Settling Party concerning the

18  Stipulation or its Exhibits other than the representations, warranties, and covenants contained and

19  memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall

20  bear its own costs.

21       9.14   This Settlement Agreement shall be construed and interpreted to effectuate the

22  intent of the Settling Parties, which is to resolve completely those claims and disputes, including

23  in the Litigation, and as more fully described herein.  If any provision of this Settlement

24  Agreement shall be determined to be invalid, void, or illegal, such provision shall be construed

25  and amended in a manner that would permit its enforcement, but in no event shall such provision

26  affect, impair, or invalidate any other provision hereof.

27       9.15   Neither the Class Members nor Defendants shall be bound by the Stipulation if

28  the Court modifies material terms thereof, provided, however, that it shall not be a basis for

1    Class Members to terminate the Settlement if the Court modifies any proposed Plan of

2    Allocation or criteria for allocation of the Net Settlement Fund amongst Class Members, or the

3    Plan of Allocation is modified on appeal.  Nor shall it be a basis to terminate the Stipulation if

4    the Court disapproves of or modifies the terms of this Stipulation with respect to attorney's fees

5    or expenses or the distribution of the Net Settlement Fund, except that Court disapproval or

6    modification of the conditions specified in ¶¶ 3.5 and 6.7 may be a basis to terminate the

7    Stipulation.  Notwithstanding any such modification of the terms or Plan of Allocation or the

8    Stipulation with respect to attorneys' fees or expenses, Defendants and Defendants' insurers

9    shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called

10   upon to contribute additional funds to the Settlement Amount.

11        9.16    Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to

12   take all appropriate action required or permitted to be taken by the Class pursuant to the

13   Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications

14   or amendments to the Stipulation on behalf of the Class which it deems appropriate.

15        9.17    Each counsel or other Person executing the Stipulation or any of its Exhibits on

16   behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

17        9.18    All notices, requests, demands, claims, and other communications hereunder shall

18   be in writing and shall be deemed duly given: (i) when delivered personally to the recipient; (ii)

19   one (1) business day after being sent to the recipient by reputable overnight courier service

20   (charges prepaid); or (iii) five (5) business days after being mailed to the recipient by certified or

21   registered mail, return receipt requested and postage prepaid, and addressed to the intended

22   recipient as set forth below:

23        ***If to Lead Plaintiff or to Lead Counsel***:

          Jacob A. Walker (SBN 271217)
24        BLOCK & LEVITON LLP

25        260 Franklin Street, Suite 1860
          Boston, MA 02110
26

27

28

*If to Defendants or to Defendants' counsel*:

Colleen Smith (SBN 231216)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130

9.19     The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or by PDF via e-mail shall be deemed originals.

9.20     The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

9.21     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.22     Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all members of the Class shall be barred and enjoined from commencing any action to prosecute or prosecuting any of the Released Claims against any of the Released Defendant Parties.

9.23     This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California, without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated June 8, 2022.

CASE NO. 4:19-CV-02690-HSG
STIPULATION AND AGREEMENT
OF CLASS ACTION SETTLEMENT

Dated:  June 8, 2022

LATHAM & WATKINS LLP

By: _Andrew B. Clubok_

LATHAM & WATKINS LLP
Colleen C. Smith (SBN 231216)
 colleen.smith@lw.com
12670 High Bluff Drive
San Diego, CA 92130
858.523.5400 / 858.523.5450 (fax)

Elizabeth Deeley (SBN 230798)
 elizabeth.deeley@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415.391.0600 / 415.395.8095 (fax)

Matthew Rawlinson (SBN 231890)
 matthew.rawlinson@lw.com
140 Scott Drive
Menlo Park, CA 94025
650.328.4600 / 650.463.2600 (fax)

Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
 andrew.clubok@lw.com
 susan.engel@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
202.637.2200 / 202.637.2201 (fax)

*Attorneys for Defendants Lyft, Inc., Logan Green,*
*John Zimmer, Brian Roberts, Prashant (Sean)*
*Aggarwal, Ben Horowitz, Valerie Jarrett, David*
*Lawee, Hiroshi Mikitani, Ann Miura-Ko, and Mary*
*Agnes (Maggie) Wilderotter*

CASE NO. 4:19-CV-02690-HSG
STIPULATION AND AGREEMENT
OF CLASS ACTION SETTLEMENT

Dated:  June 8, 2022

BLOCK & LEVITON LLP

By: _____
Jeffrey C. Block (*pro hac vice*)
 *jeff@blockleviton.com*
Jacob A. Walker (SBN 271217)
 *jake@blockleviton.com*
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel:  617.398.5600
Fax:  617.507.6020

*Attorneys for Lead Plaintiff Rick Keiner and the Class*