1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE LYFT INC. SECURITIES
LITIGATION

Case No.  19-cv-02690-HSG

**ORDER GRANTING MOTION FOR
PRELIMINARY APPROVAL**

Re: Dkt. No. 249

Before the Court is the motion for preliminary approval of class action settlement.  *See*
Dkt. No. 249 ("Mot.").  The Court held hearings on the motion on September 15 and November
17, 2022.  *See* Dkt. Nos. 268, 286.  The parties submitted several revisions to the settlement
agreement and proposed class notice.  *See* Dkt. Nos. 276, 291, 293.  The Court **GRANTS** the
motion.

**I.    BACKGROUND**

**A.    Factual Allegations and Procedural Background**

Plaintiffs purchased shares of Defendant Lyft Inc.'s common stock when Lyft went public
through an Initial Public Offering ("IPO") on March 28, 2019.  *See* Dkt. No. 252 ("SAC") ¶¶ 3, 5,
31.  Plaintiffs bring this securities class action against Lyft and certain of its officers and directors
regarding representations in Lyft's IPO Registration Statement.  *See id.* ¶¶ 2, 32–45.  Plaintiffs
allege that the Registration Statement misrepresented and failed to disclose (1) the potential for
reputational damage and legal liability due to sexual assault allegations against drivers; (2) that
Lyft's market share was shrinking because of a price war with Uber; and (3) safety issues with
Lyft's bike sharing program.  *See id.* ¶ 45.

Based on these allegations, Plaintiffs assert causes of action for violations of Sections 11

and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o.  *Id.* ¶¶ 187–98.

In August 2021, the Court certified a class of "[a]ll persons and entities who purchased or otherwise acquired the common stock of Lyft issued and traceable to the IPO Registration Statement."  Dkt. No. 177 at 12–13.  The Court appointed Rick Keiner as Class Representative and Block & Leviton LLP as Class Counsel.  *Id.* at 13.

**B.    State Action**

Certain members of the proposed Settlement Class are also the proposed lead plaintiffs ("State Plaintiffs") in a related putative class action ("State Action") pending in California Superior Court, *In re Lyft, Inc. Securities Litigation*, No. CGC-19-575293 (Cal. Super. Ct., S.F. Cnty.).  *See* Dkt. No. 293-1 ("Settlement Agreement" or "SA") § 1.30.  State Plaintiffs who had previously opted out of the class sought to intervene in this case.  *See* Dkt. No. 257.  After the preliminary approval hearing, the parties agreed to allow those who had opted out of the class to opt back in.  *See* Dkt. No. 275.  The State Plaintiffs withdrew their motion to intervene as moot. *See* Dkt. No. 283 at 1.

**C.    Settlement Agreement**

In November 2021, the parties participated in formal mediation with David Murphy of Phillips ADR.  Mot. at 5; Dkt. No. 249-1 ("Block Decl.") ¶¶ 49–55.  In February 2022, the parties agreed in principle to the mediator's recommendation to settle for $25 million.  Mot. at 5; Block Decl. ¶ 55.  In June 2022, the parties executed a settlement agreement.  *See* Dkt. No. 249-2 at 29–31.  In response to concerns raised by the Court at the preliminary approval hearing in September 2022, the parties executed a revised settlement agreement.  *See* Dkt. Nos. 276, 276-1. The primary changes to the settlement agreement were (1) a revised definition of "Released Claims," (2) a provision allowing those who opted out of the class to opt back in, and (3) a revised allocation plan that allowed class members to receive a minimum of $10.  *See* Dkt. No. 276 ¶ 4. After the court raised additional concerns about the proposed *cy pres* recipient, the parties submitted a further revised settlement agreement in November 2022.  *See* Dkt. No. 293.

The key terms are as follows:

Class Definition:  The Settlement Class is defined as "all persons and entities who

1    purchased or otherwise acquired the common stock of Lyft issued and traceable to the IPO

2    Registration Statement (between March 28, 2019, and August 19, 2019)."  SA § 1.3; *see also* Dkt.

3    No. 293-3 ("Class Notice" or "CN") at 7.

4        Settlement Benefits:  Defendant Lyft, Inc. will make a $25 million non-reversionary

5    payment.  SA §§ 1.26, 6.8.  Lyft will pay into an interest-bearing escrow account in three

6    installments: $500,000 to cover reasonable class notice costs within ten days of preliminary

7    approval and receipt of instructions from Lead Counsel, half of the remainder at least five days

8    before the final approval hearing, and the rest within ten days of final approval.  *Id.* § 3.1.

9        The settlement fund includes notice and administration expenses, taxes and tax expenses,

10   Court-approved attorneys' fees and costs, any award to Lead Plaintiff as allowed under the Private

11   Securities Litigation Reform Act of 1995 ("PSLRA"), and any other Court-approved fees or

12   expenses.  *Id.* §§ 1.16, 6.3.  Payments to class members will be distributed per the allocation plan

13   on a *pro rata* basis.  *Id.* §§ 6.3(e), 6.7.  Each class member must submit a proof of claim and

14   release form to the Claims Administrator within 90 days of the notice date to be eligible for

15   payment.  *Id.* § 6.5.  Payments will be calculated based on the "recognized loss" for each share,

16   using a method that tracks the statutory formula under Section 11 of the Securities Act.  CN at

17   14–15.  The estimated average recovery per share is 77 cents and authorized claimants will receive

18   a minimum of $10.00.  *Id.* at 2, 15.

19       *Cy Pres* Distribution:  Defendants will not have a reversionary interest in the settlement

20   fund if there is a balance remaining after distribution.  SA § 6.8.  Instead, Lead Counsel will make

21   further distributions to authorized claimants until the balance remaining is *de minimis*.  *Id.*  Any

22   remaining balance will be donated to the Bluhm Legal Clinic Center for Litigation and Investor

23   Protection at Northwestern University Pritzker School of Law.  *Id.*

24       Release:  Under the Settlement Agreement, Lead Plaintiff and the Class will release:

25   [A]ny and all claims and causes of action of every nature and description whatsoever as
     against the Released Defendant Parties, that have been or could have been asserted in this
26   or any other action that (a) arise out of, are based upon, or relate in any way to any of the
     allegations, acts, transactions, facts, events, matters, occurrences, representations or
27   omissions involved, set forth, alleged or referred to in this action, or which could have
     been alleged in this action, or (b) arise out of, are based upon, or relate in any way to the

28

3

United States District Court
Northern District of California

purchase, acquisition, holding, sale, or disposition of any Lyft securities acquired pursuant and/or traceable to Lyft's Registration Statement, including Unknown Claims as defined below, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether fixed or contingent, whether foreseen or unforeseen, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether direct, representative, class, or individual in nature.

SA §§ 1.22, 5.1; CN at 9–10.  The release includes "Unknown Claims" as defined in the Settlement Agreement.  SA § 1.33.  Lead Plaintiff and the Class agree to "expressly waive, and be deemed to have waived, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542," along with "any and all provisions, rights, and benefits conferred by law of any state or territory of the United States, or principle of common law that are similar, comparable, or equivalent to California Civil Code § 1542."  SA §§ 1.33, 5.1; CN at 11.

Class Notice:  A third-party settlement administrator will mail class notice and claim forms to all shareholders previously identified by the administrator during the class certification notice period.  SA § 6.2.  The notice and proof of claim and release forms will also be posted on the settlement administrator website at www.LyftIPOLitigation.com.  Id.; CN at 2.  The notice will be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.  Id.; *see also* Block Decl. ¶¶ 56–57.

Opt-Out Procedure:  The deadlines for a class member to opt out or object to the settlement are twenty-one days and thirty-five days prior to the final approval hearing, respectively.  *See* Dkt. No. 276-3 ¶¶ 10, 13.  Defendant retains the right to withdraw if the number of opt-outs reaches an agreed-upon threshold.  SA § 8.3.  The threshold is set out in a confidential supplemental agreement, which the parties have filed provisionally under seal for the Court's review.  *See* Dkt. No. 296.

Miscellaneous Provisions:  Defendants will, "as soon as reasonably practicable following entry of Judgment, move for the denial with prejudice of class certification in the State Action."  SA § 9.1.

Service Award:  Lead Plaintiff may apply for reimbursement of reasonable costs and expenses related to representation of the Class, not to exceed $10,000, consistent with the PSLRA and subject to the Court's approval.  Mot. at 8; SA § 7.1.

1        <u>Attorneys' Fees and Costs</u>:  Class Counsel intends to file an application for attorneys' fees

2    not to exceed 25% of the settlement fund, or $6,250,000, and costs not to exceed $550,000 for

3    litigation expenses reasonably incurred while prosecuting this case.  *Id.*

4    **II.    PROVISIONAL CLASS CERTIFICATION**

5        The Court previously certified a class under Federal Rule of Civil Procedure 23(b)(3).

6    Dkt. No. 177.  Thus, "the only information ordinarily necessary is whether the proposed

7    settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding

8    which certification was granted."  Fed. R. Civ. P. 23 Advisory Committee's Note to 2018

9    Amendment.  The proposed Settlement Class is identical to the class already certified by the

10   Court.  *See* SA § 1.2.  Though the Second Amended Complaint became the operative complaint

11   after class certification, the added allegations do not alter the Court's Rule 23 analysis.  *See* Dkt.

12   Nos. 248, 250.  Class members continue to share the same legal claims under the Securities Act.

13   Accordingly, there is no need to revisit the Court's prior analysis and the Court provisionally

14   certifies the Settlement Class.  *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022

15   WL 2817588, at *3 (N.D. Cal. July 19, 2022).

16   **III.   PRELIMINARY SETTLEMENT APPROVAL**

17       Finding that provisional class certification is appropriate, the Court considers whether it

18   should preliminarily approve the parties' class action settlement.

19       **A.    Legal Standard**

20       Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

21   certified class—or a class proposed to be certified for purposes of settlement—may be settled . . .

22   only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect

23   the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re*

24   *Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a district court

25   approves a class action settlement, it must conclude that the settlement is "fundamentally fair,

26   adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

27       Where the parties reach a class action settlement prior to class certification, district courts

28   apply "a higher standard of fairness and a more probing inquiry than may normally be required

United States District Court
Northern District of California

under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

"The Court cannot . . . fully assess [the fairness] factors until after the final approval hearing; thus, a full fairness analysis is unnecessary at this stage." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (quotation omitted). "At the preliminary approval stage, the settlement need only be potentially fair." *Id.* (quotation omitted). Preliminary approval is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Dennis*, 697 F.3d at 868 (quotation omitted).

**B.    Analysis**

**i.    Evidence of Conflicts and Signs of Collusion**

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that gives unclaimed funds back to the defendant. *Id.*

Those subtle signs of collusion are absent in this case. The settlement agreement is non-

United States District Court
Northern District of California

1  reversionary and does not contain a clear sailing agreement.  *See* SA § 6.8; Mot. at 11.  Class

2  Counsel will file an application for fees not to exceed 25% of the settlement fund, or $6,250,000,

3  as well as costs not to exceed $550,000 for litigation expenses.  CN at 17; Mot at 8.  Under the

4  percentage-of-recovery method, 25% of a common fund is the "benchmark" for a reasonable fee

5  award.  *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942.  Still, the Court is cognizant of its obligation to

6  review class fee awards with rigor, and at the final approval stage will scrutinize the circumstances

7  and determine what fee award is appropriate in this case.  The settlement process further supports

8  the conclusion that there was no collusion.  The parties reached the settlement with the assistance

9  of an experienced mediator after two-and-a-half years of litigation, extensive discovery and

10  motion practice, and months of negotiations.  *See* Block Decl. ¶¶ 3–55.

11      Accordingly, given that Class Counsel will not request a disproportionate amount of the

12  settlement agreement and that other signs of collusion or conflict are not present, the Court finds

13  that this factor weighs in favor of preliminary approval.

14          ii.    ***Cy Pres* Distribution**

15      The Court must also evaluate whether the parties' proposed *cy pres* recipient is

16  appropriate.  A *cy pres* award must qualify as "the next best distribution" to giving the funds to

17  class members.  *Dennis*, 697 F.3d at 865.  "Not just any worthy recipient can qualify as an

18  appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class

19  and the *cy pres* beneficiaries."  *Id.* (quotation omitted).  That is to say, a *cy pres* award must be

20  "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class

21  members, and must not benefit a group too remote from the plaintiff class."  *Id.* (quotation

22  omitted).  A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any

23  class member would benefit from it."  *Id.* (quotation omitted).

24      Here, the parties have selected the Bluhm Legal Clinic Center for Litigation and Investor

25  Protection at Northwestern University Pritzker School of Law as the *cy pres* recipient.  SA § 6.8.

26  The Center combines classroom instruction with practical skill development for law students

27  working on investor client cases.  *See* Dkt. No. 293 ¶ 5.  Through the Center, law students assist

28  investors with limited income who have disputes with stockbrokers, investment advisors, or

1    securities firms.  *Id.*  The Center's work aligns with the objectives of the federal securities laws

2    underlying this case and the interests of class members in protecting investors.  *Id.* ¶ 6; *see*

3    *generally* SAC.  Accordingly, the Court preliminarily finds that there is a sufficient nexus between

4    the *cy pres* recipient and the class.

                          **iii.    Preferential Treatment**

6           The Court next considers whether the settlement agreement provides preferential treatment

7    to any class member.  The Ninth Circuit has instructed that district courts must be "particularly

8    vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to

9    infect negotiations."  *In re Bluetooth*, 654 F.3d at 947.  For that reason, courts in this district have

10   consistently stated that preliminary approval of a class action settlement is inappropriate where the

11   proposed agreement "improperly grant[s] preferential treatment to class representatives."  *In re*

12   *Tableware*, 484 F. Supp. 2d at 1079.

13          Lead Plaintiff intends to seek reimbursement of reasonable costs and expenses related to

14   representation of the Class, not to exceed $10,000.  Mot. at 8, 13; SA § 7.1.  The PSLRA generally

15   prohibits incentive or service awards to class representatives.  *Rodriguez v. W. Publ'g Corp.*, 563

16   F.3d 948, 960 n.4 (9th Cir. 2009) (citing 15 U.S.C. § 78u-4(a)(2)(A)(vi)).  Plaintiff is not

17   precluded, however, from seeking an award of "reasonable costs and expenses (including lost

18   wages) directly relating to the representation of the class[.]"  *Id.* § 78u-4(4).  Lead Plaintiff will

19   need to provide "meaningful evidence demonstrating that the requested amounts represent actual

20   costs and expenses incurred directly as a result of the litigation."  *See In re Twitter Inc. Sec. Litig.*,

21   No. 16-CV-05314-JST, 2022 WL 17248110, at *2 (N.D. Cal. Nov. 21, 2022) (quotation omitted).

22   The Court will consider the evidence presented in Lead Plaintiff's motion and evaluate the

23   reasonableness of any award request.  Because Lead Plaintiff's intent to seek reasonable costs and

24   expenses is not per se unreasonable, the Court finds that this factor weighs in favor of preliminary

25   approval.

26         Further, the settlement agreement does not single out any segment of the class for

27   favorable treatment.  Each authorized claimant will receive a *pro rata* distribution of the

28   Settlement Fund in proportion to their potential damages based on the statutory formula.  *See* SA

United States District Court
Northern District of California

1    § 6.7.  The parties revised allocation plan ensures that all authorized claimants will receive a

2    minimum of $10.  *See* CN at 15.

3            iv.    **Settlement Within Range of Possible Approval**

4            The Court also generally considers whether the settlement is within the range of possible

5    approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider

6    plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware*,

7    484 F. Supp. 2d at 1080.  This requires the Court to evaluate the strength of Plaintiff's case.

8            First, the Court notes that the $25 million settlement amount was the mediator's

9    recommendation.  Mot. at 6; Block Decl. ¶ 55.  Lead Plaintiff and Lead Counsel, with the aid of

10   damages experts, estimated the maximum recovery at trial to be $535 or $777 million, depending

11   on which date controls for the damages formula.  *See* Mot. at 14–15; Block Decl. ¶ 48.  Lead

12   Counsel believes it would have been difficult to obtain this amount at trial given Defendants'

13   "potentially strong" negative causation defenses.  *See* Mot. at 14; Block Decl. ¶ 52.  The

14   settlement agreement provides for at least 3.2% of the highest possible estimated recovery.  *See*

15   Mot. at 15.  Though below the median percentage of recovery for comparable securities class

16   action settlements described in one recent study, it is not outside the range of a reasonable

17   recovery.[1]  *Id.*; *see, e.g.*, *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6

18   (N.D. Cal. Nov. 5, 2021).  Lead Plaintiff and Lead Counsel also acknowledge they would face

19   substantial risk in continuing to litigate through summary judgment and trial.  Mot. at 15–16.

20           Further, the scope of the proposed release, as revised, does not push this settlement outside

21   the range of possible approval for purposes of preliminary settlement.  Though broad, comparable

22   release language is routinely approved by courts in this circuit.  *See Nen Thio v. Genji, LLC*, 14 F.

23   Supp. 3d 1324, 1334 (N.D. Cal. 2014) (collecting cases).

24           In sum, the Court finds that this settlement is well within the range of possible approval.

25

26

27   _____

28   [1] *See also* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, Cornerstone Research (2022), available at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf

United States District Court
Northern District of California

### v.   Fairness of Supplemental Agreement

The Court must also review the fairness of the parties' confidential supplemental agreement. *See* Dkt. No. 296. The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018). Having reviewed the supplemental agreement provisionally filed under seal, the Court concludes that the termination provision is fair and reasonable.

### vi.   Obvious Deficiencies

The Court also considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\*      \*      \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV.   PROPOSED PLAN OF ALLOCATION

The Court also must preliminarily approve the plan of allocation. A distribution plan is governed by the same legal standards that apply to the approval of a settlement: the plan must be fair, reasonable, and adequate. *See, e.g.*, *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Nguyen v. Radient Pharms. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (quotation omitted). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.*

The Plan of Allocation here uses a "recognized loss" value that tailors each class member's

1  recovery to the timing of any sales or purchases of common stock, as well as the number of shares

2  at issue for each class member's claim.  *See* CN at 14–17; Mot. at 7.  The calculations will be

3  made using the damages formula of Section 11(e).  *Id.*  The settlement fund will thus be

4  distributed on a *pro rata* basis according to each class member's recognized loss.  The Court

5  preliminarily approves the allocation plan.

6  **V.    PROPOSED CLASS NOTICE PLAN**

7         For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best

8  notice that is practicable under the circumstances, including individual notice to all members who

9  can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice may be sent

10 by "United States mail, electronic means, or other appropriate means."  *Id.*  "Individual notice

11 must be sent to all class members whose names and addresses may be ascertained through

12 reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The notice must

13 clearly and concisely state in plain, easily understood language:

14      (i)     the nature of the action;
15      (ii)    the definition of the class certified;
        (iii)   the class claims, issues, or defenses;
16      (iv)    that a class member may enter an appearance through an attorney if
                the member so desires;
17      (v)     that the court will exclude from the class any member who requests
                exclusion;
18      (vi)    the time and manner for requesting exclusion; and
        (vii)   the binding effect of a class judgment on members under Rule
19              23(c)(3).

20 Fed. R. Civ. P. 23(c)(2)(B).  In addition, the PSLRA requires that notice include (1) "[t]he amount

21 of the settlement . . . determined in the aggregate and on an average per share basis," (2) "the

22 average amount of [the] potential damages per share," (3) a statement of any fees or costs that

23 counsel intends to seek from the settlement fund, (4) class counsel's contact information, and (5)

24 "[a] brief statement explaining the reasons why the parties are proposing the settlement."  15

25 U.S.C. § 78u-4(a)(7).

26       The Court has carefully reviewed the proposed class notice, as revised, and is satisfied that

27 it meets the requirements of the PSLRA and the Federal Rule of Civil Procedure 23(c)(2)(B).  *See*

28 *generally* CN.  In question-and-answer format, the notice clearly describes the nature of the case,

United States District Court
Northern District of California

1   the settlement, and the available options.  The revised notice also accurately describes the State

2   Action so that class members may assess the settlement's potential impact and decide whether

3   they wish to remain in the class.[2]  *See id.* at 10; *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566,

4   575 (9th Cir. 2004) (finding adequate class notice listing the names, case numbers, and courts of

5   pending actions arising out of the same product recall).  The content of the proposed notice

6   provides sufficient information about the case and thus conforms with due process requirements.

7   *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) ("Notice is satisfactory

8   if it generally describes the terms of the settlement in sufficient detail to alert those with adverse

9   viewpoints to investigate and to come forward and be heard." (quotation omitted)).

10         For the notice plan, Lead Plaintiff has selected A.B. Data as Claims Administrator.  Mot. at

11   7.  The Court previously approved A.B. Data after the class was certified, and A.B. Data

12   thoroughly carried out a notice plan for class certification.  *Id.*; Dkt. Nos. 203, 232.  The notice

13   plan this time is substantially similar and includes mailing all shareholders previously identified

14   by A.B. Data, posting the notice on the website, and publishing the notice in *The Wall Street*

15   *Journal* and once over a national newswire service.  *See* Mot. at 18; SA § 6.2; *De La Torre v.*

16   *CashCall, Inc.*, No. 08-CV-03174-MEJ, 2017 WL 2670699, at *11 (N.D. Cal. June 21, 2017)

17   (approving "the same [notice plan] as that which [the parties] used to notify Class Members that

18   the Court had certified the Class").

19   //

20   //

21   //

22   //

23   //

24   //

25

26   ───────────────────

27   [2] State Plaintiffs oppose preliminary approval and appeared at both hearings on the motion.  *See* Dkt. Nos. 276, 283.  State Plaintiffs' arguments do not change the Court's finding that preliminary approval is appropriate.  The ultimate fairness, adequacy, and reasonableness of this settlement

28   will be addressed fully at the final approval stage, when other class members have had the opportunity to be heard.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## VI.    CONCLUSION

The Court **GRANTS** the motion for preliminary approval.  Dkt. No. 249.  The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated:  12/16/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge