UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| IN RE LYFT INC. SECURITIES LITIGATION | Case No. 19-cv-02690-HSG (LB) |
| | **DISCOVERY ORDER** |
| | Re: ECF No. 328 |

### INTRODUCTION

This is a securities class action alleging material misstatements and omissions in Lyft's 2019 initial-public-offering registration statement.[1] Frederic Lande, the Palm Bay Police & Firefighters' Pension Fund, and the Greater Pennsylvania Carpenters' Pension Fund filed a similar class action in state court.[2] In December 2022, the federal trial court granted preliminary approval of a settlement of the federal action. Rick Keiner is the lead plaintiff and the class representative, and Block & Leviton LLP is class counsel.[3] The plaintiff moved for final approval, and the fairness

---

[1] Second Am. Compl. (SAC) – ECF No. 252 at 2–3 (¶¶ 2–6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the tops of documents. Citations are to the ECF of the present case unless the state case is specified.

[2] Am. Consol. Compl., *In re Lyft Inc. Sec. Litig.*, No. CGC-19-575293 (Cal. Super. Ct.), Ex. A to Laughlin Decl. in Supp. of Obj. – ECF No. 349-1 at 14–15 (¶¶ 1–2).

[3] Order – ECF No. 177; Order – ECF No. 297.

1   hearing is in June 2023.[4] The plaintiffs in the state case are class members in the federal case and
2   objected to the federal settlement on the ground that it is inadequate given the reasonably
3   recoverable damages and that the lead plaintiff and lead counsel thus are inadequate.[5] The federal
4   plaintiff's damages expert is Global Economics Group LLC. The objectors served a document
5   subpoena for the expert's analysis cited in support of the motion for final approval and a
6   deposition subpoena for testimony about the expert's analysis. The federal plaintiff and the
7   objectors dispute whether the objectors are entitled to that discovery.[6]

8   The court denies the discovery because under the circumstances, the requirements for objector
9   discovery are not satisfied.

## STATEMENT

### 1. Relevant History of the Federal and State Cases

The state plaintiffs' objections to the settlement are that the settlement process was an uninformed reverse auction and the settlement consideration is inadequate in light of the reasonably recoverable damages. These two arguments are related because they each are based in part on the objectors' contention that the settlement was negotiated without sufficiently taking into account the class's damages associated with a theory of liability (the so-called market-share theory) that was added to this case only after the settlement negotiations (though that theory has been asserted in the state case all along).[7]

The market-share theory is about why Lyft's initial public-offering registration statement was misleading. Specifically, while the registration statement represented that Lyft's market share (as compared to Uber's) was increasing and that Lyft was not using ride-discount coupons or otherwise engaging in a "price war" with Uber to increase Lyft's market share, in fact Lyft was at the time engaged in a coupon-based price war with Uber that caused Lyft's market share to

---

[4] Mot. for Final Approval – ECF No. 311; Scheduling Order – ECF No. 299.
[5] Obj. – ECF No. 349 at 6.
[6] Joint Disc. Letter – ECF No. 328 (narrowing documents request).
[7] Obj. – ECF No. 349 at 6–8, 14–21, 23–26.

decline. This market-share theory appears in the operative (and stipulated) Second Amended Complaint filed on June 15, 2022, as part of the settlement.[8]

A different market-share theory was asserted in the First Amended Complaint, but the trial court dismissed it with leave to amend on September 8, 2020, and the plaintiff did not amend at that point.[9] On September 30, 2021, the plaintiff moved to amend to add the current market-share theory.[10] In July 2021, the state plaintiffs had successfully opposed a motion to strike the theory from the complaint in the state case, after amending their complaint in light of discovery obtained in that case. The motion to amend in this case was premised on those new facts from the state case.[11] The motion was noticed for a hearing in February 2022.[12] Lyft opposed the motion and argued that amendment would require extending the fact-discovery deadline.[13]

In the meantime, the parties in the federal case had intermittent settlement discussions, including with a mediator, from November 2021 until February 2022.[14] On January 25, 2022, the state court stayed the state case pending the outcome in this case.[15] On February 7, 2022, the parties in this case accepted a mediator's recommendation to settle for $25 million.[16] Three days later, the trial court denied the motion to amend the complaint (to add the market-share theory) as moot.[17] On June 16, 2022, the day the plaintiff moved for preliminary approval of the settlement,

---

[8] SAC – ECF No. 252 at 4–5 (¶¶ 15–18) (overview of this theory that the registration statement was misleading), 55 (¶¶ 187–93) (count one for violation of § 11 of Securities Act because of the misleading registration statement).

[9] Order – ECF No. 96 at 12–14.

[10] Mot. to Amend – ECF No. 206.

[11] *Id.* at 9–11 (citing the state-court docket); Obj. – ECF No. 349 at 10–12 (summarizing procedural history).

[12] Scheduling Order – ECF No. 196; Mot. to Amend – ECF No. 206 at 7.

[13] Opp'n to Mot. to Amend – ECF No. 230.

[14] Block Decl. in Supp. of Mot. for Final Approval – ECF No. 314 at 14–15 (¶¶ 88–95).

[15] Laughlin Decl. in Supp. of Obj. – ECF No. 349-1 at 10 (¶ 43); Order, *In re Lyft Inc. Sec. Litig.*, No. CGC-19-575293 (Cal. Super. Ct. Jan. 25, 2022).

[16] Block Decl. in Supp. of Mot. for Final Approval – ECF No. 314 at 14 (¶ 95).

[17] Laughlin Decl. in Supp. of Obj. – ECF No. 349-1 at 10 (¶ 46); Order – ECF No. 242.

the trial court granted a stipulation by the parties to designate the Second Amended Complaint (with the market-share theory) as the operative complaint.[18]

"To the knowledge of" the state plaintiffs, the plaintiff here "was not a party to discovery concerning Lyft's price war with [Uber] [or] Lyft's declining market share."[19] Discovery in the federal case lasted from October 2020 until January 2022.[20]

In June 2021, the plaintiff retained Global Economics Group as its expert for a damages analysis. Global Economics Group calculated $535.3 million in statutory damages, assuming a first-filed date of April 15, 2019 (the date the state case was filed).[21] That figure apparently takes the market-share theory into account.[22] If the settlement is not approved, Global Economics Group will continue as the lead plaintiff's testifying expert. "For strategic reasons," though, Global Economics Group did not submit a report in connection with the settlement.[23]

The federal plaintiff retained a second expert, Matthew Cain, who submitted a report in support of the motion for final approval. Mr. Cain's report was used to support the notion that Lyft had viable "negative causation" defenses, meaning that Lyft could have argued (if the case hadn't settled) "that factors other than the alleged misstatements in the [registration statement] drove the declines in Lyft's share price."[24] (Global Economics Group also "relayed their opinions" on potential negative-causation defenses to class counsel.[25]) In the motion for final approval, the

---

[18] Laughlin Decl. in Supp. of Obj. – ECF No. 349-1 at 10 (¶ 49); Order – ECF No. 250.

[19] Laughlin Decl. in Supp. of Obj. – ECF No. 349-1 at 7 (¶ 26).

[20] Block Decl. in Supp. of Mot. for Final Approval – ECF No. 314 at 6–12 (¶¶ 29–76).

[21] Id. at 13 (¶ 85).

[22] Mot. for Final Approval – ECF No. 311 at 21 (stating that "the total, possible recoverable damages in this case would be approximately" $535.3 million but that Lyft's negative-causation argument would seek to counter the notion that the plaintiffs' damages, including those resulting from disclosures about "Lyft's declining market share," were caused by Lyft's allegedly misleading registration statement).

[23] Mot. for Final Approval – ECF No. 311 at 22 n.10.

[24] Block Decl. in Supp. of Mot. for Final Approval – ECF No. 314 at 23 (¶¶ 147–48).

[25] Id. at 13 (¶ 85).

federal plaintiff contends that these negative-causation defenses help justify the fact that the settlement recovers about 4.6% of the class's damages.[26]

The state plaintiffs retained expert Bjorn Steinholt, who calculated $616.9 million in statutory damages. He also calculated that all but about $150 million of that amount was due to misrepresentations about Lyft's market share.[27]

In their objection to the settlement, the state plaintiffs make two arguments. First, they contend that the settlement "is the result of an inadequate, uninformed reverse auction" because the plaintiff had no discovery to inform him about the damages attributable to the market-share theory, and it was uncertain whether his motion to amend to add the market-share theory would be successful. By contrast, the market-share theory was live in the state case; thus, the state plaintiffs contend, the settlement negotiations were a reverse auction in which Lyft chose the plaintiff who was in the weakest position (among multiple cases) so that a weak settlement could be used with preclusive effect against the other plaintiffs.[28]

Second, the state plaintiffs argue that the settlement consideration is inadequate because "the [c]lass has a strong case with a substantial likelihood of a significant recovery at trial ranging into the hundreds of millions of dollars." In support of this argument, the state plaintiffs say the evidence of liability is strong (in light of the discovery the state plaintiffs have) and Lyft's negative-causation defenses are weak.[29]

### 2. Discovery Dispute

The discovery dispute was submitted to the court before the objection, but the trial court declined to extend the objection deadline to accommodate the discovery at issue before objections.[30] *See* 4 Newberg & Rubenstein on Class Actions § 13:32 (6th ed. 2022) ("objectors'

---

[26] Mot. for Final Approval – ECF No. 311 at 21–23.

[27] Bjorn Decl., Ex. C to Laughlin Decl. in Supp. of Obj. – ECF No. 349-1 at 90.

[28] Obj. – ECF No. 349 at 14–23.

[29] *Id.* at 23–30.

[30] Admin Mot. – ECF No. 329; Order – ECF No. 332.

right to develop the factual record for their objection extends to the fairness hearing" and "the district court enjoys considerable discretion in running the fairness hearing").

The state plaintiffs-objectors and the federal plaintiff dispute whether the former are entitled to documents and deposition testimony from the federal plaintiff's damages expert, Global Economics Group, to support their objection.[31] As for documents, the state plaintiffs request only Global Economics Group's analysis cited in support of final approval.[32] They request deposition testimony concerning all work performed by Global Economics Group in the case.[33]

The state plaintiffs contend that because the federal plaintiff didn't have discovery on the market-share theory before agreeing to the settlement, discovery into Global Economics Group's damages analysis is necessary to determine whether the plaintiff was adequately informed of the market-share theory's value (thus implicating his adequacy as a class representative and the adequacy of class counsel) and whether the settlement amount is fair. The state plaintiffs also contend that the federal plaintiff waived any work-product protection by relying on Global Economics Group's analysis in the final-approval motion.[34]

The plaintiff responds that (1) the state plaintiffs have no legitimate need for the discovery, (2) there are no red flags of collusion between the plaintiff and Lyft, (3) between the publicly available facts about Lyft's stock-price movement and the state plaintiffs' damages expert, the state plaintiffs have all the information they need, and (4) the requested information is protected work product.[35] Regarding the deposition, the plaintiff further contends that the subpoena is improper because an expert deposition must be after a report is provided, and the subpoena calls for the deposition to be in San Francisco even though Global Economics Group is in Chicago.[36]

The court held a hearing on the discovery dispute on April 27, 2023.

---

[31] Joint Disc. Letter – ECF No. 328.
[32] *Id.* at 1.
[33] *Id.*; Subpoena, Ex. A to *id.* – ECF No. 328-1 at 37.
[34] Joint Disc. Letter – ECF No. 328 at 1–3.
[35] *Id.* at 3–5.
[36] *Id.* at 4 n.4.

ORDER – No. 19-cv-02690-HSG (LB)                                6

## ANALYSIS

Objectors to a class-action settlement are entitled to discovery to extent that it "may assist [the court] in determining the fairness and adequacy of the settlement." *In re Wachovia Corp. Pick-A-Payment Mortg. Mktg. & Sales Pracs. Litig.*, No. CV 09-02015 JF PSG, 2011 WL 1496342, at *1 (N.D. Cal. Apr. 20, 2011); 4 Newberg & Rubenstein on Class Actions § 13:32 (6th ed. 2022) ("The touchstone for [objector] discovery is that it will ultimately assist the court in determining the fairness of the settlement."). The relevant factors are (1) "the nature and amount of previous discovery," (2) whether there is a "reasonable basis for the evidentiary requests," and (3) the "number and interests of objectors." *In re Wachovia*, 2011 WL 1496342, at *1. Regarding the first factor, "[w]here the evidence submitted in support of the settlement is the result of truly adversarial proceedings and where the comprehensiveness of the records developed by the proponents increases, the objector has a greater burden to show the necessity of additional evidence." *Id.*

An objector may have a greater right to obtain the existing discovery in the case than he does to obtain any new discovery. This is because, as to "the discovery materials that predated the settlement," it may make more sense for objectors (as class members) to have access "as a means of facilitating appraisal of the strengths of the class positions on the merits." 4 Newberg & Rubenstein on Class Actions § 13:32 (6th ed. 2022) (quoting Manual for Complex Litigation, Fourth, § 21.643).

The court starts with the plaintiff's argument that the requested documents are protected work product. Where "an expert . . . has supplied statements, findings, or opinions explicitly relied upon by a party in a pleading or motion," that party has used the opinion as a "sword" and cannot also use it as a "shield." *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at *5 (N.D. Cal. Dec. 13, 2013) (collecting cases); *cf.* Fed. R. Evid. 502(a) (work-product waiver extends to "information concern[ing] the same subject matter" that "ought in fairness to be considered together" with the information intentionally disclosed). This is true even before an expert who is expected to be called as a testifying expert has been designated as such. *Worley*, 2013 WL 6576732, at *4–5 (even though the expert was not yet a designated testifying

expert, the expert had been relied on in the complaint). That said, relying on an expert's opinion before designating the expert does not result in a blanket waiver of work-product protection; it is the act of designating the expert that "waives all otherwise applicable privileges and protections." *United States v. Sierra Pac. Indus.*, No. CIV S-09-2445 KJM EF, 2011 WL 2119078, at *7–8 (E.D. Cal. May 26, 2011).

Global Economics Group has provided two analyses thus far: one on the amount of damages and another on negative-causation defenses. The former is cited in the final-approval motion.[37] The latter is not; Global Economics Group was merely consulted on the subject, and another expert (Mr. Cain) was relied on for the motion.[38] Thus, only the amount-of-damages analysis has been put at issue, and only that analysis is potentially subject to disclosure. *See id.* at *5.

The question then is whether, as to Global Economics Group's amount-of-damages analysis, the state plaintiffs are entitled to discovery under the factors for evaluating objector discovery.

The state plaintiffs have a greater interest than most objectors because they are the plaintiffs in a parallel (putative) class action. Although no class has been certified in the state case yet, and the state case is stayed, the state plaintiffs seek to certify a class and thus are shouldering more responsibility than most class members. Indeed, it was only through the state case that the current market-share theory came to be. This greater interest matters, especially because when there are parallel class actions being pursued by different plaintiffs, the competing claims might be resolved "by the operation of preclusion once the first case crosses the finish line." 6 Newberg & Rubenstein on Class Actions § 18:1 (6th ed. 2022). (Here, the state court, at least, described the parallel cases as "substantially identical."[39]) That the state case is stayed in favor of this case lessens the state plaintiffs' interest somewhat, but they still have live claims.

Despite the state plaintiffs' interest, though, the requested discovery is not warranted here. The likely value of discovery about Global Economics Group's amount-of-damages estimate is

---

[37] Mot. for Final Approval – ECF No. 311 at 21; Block Decl. in Supp. of Mot. for Final Approval – ECF No. 314 at 13 (¶ 85).

[38] Mot. for Final Approval – ECF No. 311 at 21–23 & n.10.

[39] Order at p. 5, *In re Lyft Inc. Sec. Litig.*, No. CGC-19-575293 (Cal. Super. Ct. Jan. 25, 2022).

ORDER – No. 19-cv-02690-HSG (LB)   8

lessened (if not eliminated) by the fact that damages in this case are calculated by reference to Lyft's stock-price movement, which is public information. *See, e.g.*, *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017). Thus, the state plaintiffs' argument that Global Economics Group's amount-of-damages estimate was uninformed because Global Economics Group didn't have access to relevant discovery is less compelling; Global Economics Group didn't need that access. *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623 (S.D. Cal. 2005) ("Either the settlement terms will, in the District Judge's opinion, be fair, reasonable and adequate to the class based on this showing or they will not, and that will be true irrespective of what is contained in Class Counsel's files."). On this record, the court declines to disturb the work-product protection that attaches to the damages estimate and protects the federal plaintiff's strategies to an extent in case the settlement isn't approved.

## CONCLUSION

The court denies the state plaintiffs' request for discovery. This resolves ECF No. 328.

**IT IS SO ORDERED.**

Dated: May 1, 2023

_____
LAUREL BEELER
United States Magistrate Judge